David BRITT, Patrick Groves, Ind. and
as Next Friend of Patrick B. Groves,
Jr., et al., Appellants,

v.

CAMBRIDGE MUTUAL FIRE
INSURANCE COMPANY,
Appellee.

No. 04–85–00136–CV.

Court of Appeals of Texas,
San Antonio.

Sept. 30, 1986.

Jo Chris Lopez, Richard Francis, Charles R. Shaddox, San Antonio, for appellants.

William H. Quirk, Robert M. Smith, Thomas E. Quirk, San Antonio, for appellee.

OPINION

Before CADENA, C.J., and REEVES and TIJERINA, JJ.

ON APPELLANTS' MOTION FOR REHEARING

REEVES, Justice.

Appellants' motion for rehearing is denied. However, the opinion delivered July 16, 1986, is here withdrawn and the following opinion is filed in its stead.

This is an appeal from a declaratory judgment. The trial court held that appellants recover nothing from appellee, Cambridge Mutual Fire Insurance Company (Cambridge), under a homeowners' insurance policy issued by Cambridge. The court found that a judgment against the insured was obtained by fraud and collusion, and the loss was caused by the intentional acts of the insured.

In the court below, Cambridge was the plaintiff against David Britt, defendant, and Patrick Brian Groves, individually and as next friend of Patrick Brian Groves, Jr., and Michelle Groves, (Groves) was the intervenor.

Three court cases arose from the death of Sandra Groves: *State v. Britt*, in which David Britt was found guilty of murder; *Groves v. Britt*, in which David Britt was found to have negligently caused the death of Sandra Groves and *Cambridge v. Britt*, the declatory judgment action from which this appeal is taken.

One of the appellants, David Britt, a covered insured on his parents' homeowners' insurance policy, stabbed his aunt, Sandra Groves, while she was visiting in his parents' home.

Sandra Groves' husband, Patrick Groves, made demand on Cambridge for payment under the policy, contending that the act of David Britt could be considered unintentional.

On May 11, 1982, Cambridge wrote a letter to Mrs. Dennis Britt which stated in part:

Please be advised that we have completed our investigation of this matter and must advise you we are unable to provide coverage for David Britt under Cambridge Mutual policy—there is no cover-

age under your Homeowners Policy for the incident which occurred on June 26, 1981, the Cambridge Mutual Fire Insurance Company will do no further investigation, defend any court actions which are brought against David Britt, or any judgment which may be rendered against David Britt.

After pleading not guilty, David Britt, on August 19, 1982, was convicted of the murder of Sandra Groves. Both the issues of his intent to take the life of Sandra Groves and his insanity were fully litigated at this trial. Attorney Steven A. Sinkin assisted David Britt's criminal defense attorney at the murder trial.

On August 24, 1982, Sinkin, who had been hired by Groves on the recommendation of Cambridge's insured, Elsie Britt (mother of David), filed an original petition on behalf of the Groves against Elsie, Dennis (father of David), and David Britt. The petition alleged that the negligence of David Britt caused the death of Sandra Groves. Elsie Britt informed Cambridge of the suit and asked if Cambridge would provide them a lawyer. Cambridge then offered to defend all insureds under a reservation of rights.

Cambridge hired Joe Frazier Brown, Jr., to answer on behalf of the Britts, but notified the Britts that Cambridge would not provide an unqualified defense for David, although it would provide an unqualified defense for his parents.

Meanwhile, on January 28, 1983, Cambridge brought this suit (*Cambridge v. Britt*), seeking a declaratory judgment that Cambridge had no duty to defend David Britt in *Groves v. Britt*. Sinkin recommended that David hire Richard J. Karam to defend him.

Sinkin wrote a letter on behalf of the Groves demanding Cambridge pay its policy limits, $25,000, in settlement of the lawsuit. Karam wrote a letter on behalf of Dennis, Carol and David Britt to Cambridge [1] instructing it to accept the offer of settlement. Upon Cambridge's refusal to settle, Karam made demand that Cambridge defend David without reservation. This Cambridge would not do. David's attorney then filed a motion to disqualify Brown. He alleged that Cambridge had refused to represent him, the insurance company had no authority to represent him, the representation under a non-waiver condition was not acceptable, and if the insurance company would not represent him with full responsibility to indemnify, it should withdraw from the lawsuit. In addition, he alleged there was a "blatant conflict of interest" between Britt and Cambridge.

On February 18, 1983, the Honorable Rose Spector, District Judge, signed an order removing Brown as David Britt's legal representative and naming Karam in his stead. Brown remained in the lawsuit as attorney for Elsie and Dennis Britt. The Groves took a nonsuit as to them, and thus removed Brown, the only attorney affiliated with Cambridge, from the lawsuit.

On March 9, 1983, the Groves and David Britt entered an agreement wherein the Groves promised to levy execution only on the insurance proceeds. The agreement recites that the Groves were aware that David had nothing of significant value subject to execution save the Cambridge insurance policy. Further, that the Groves' desire was to obtain a fair and just judgment against David and to avoid the expense and ordeal of litigation when the liability was certain and the damages easily ascertainable. David agreed to "waive procedural formalities attendant to the gathering of evidence, testimony, and exhibits, and the twenty-day notice of trial setting, and is willing to provide relevant, unprivileged documents and testimony upon request of the 'Groves' parties without the necessity of formal proceedings."

Enacio Barretto, an attorney who officed with Sinkin and participated with him in the

---

1. The correspondence in this case was addressed to The Andover Companies of which Cambridge is one.

criminal case, testified that on June 28, 1983, Patrick B. Groves and Karam appeared in the chambers of the Honorable Fred Biery for the trial of the *Groves v. Britt* lawsuit. David Britt was not in attendance, nor was Cambridge represented at the proceeding. Judge Biery was not in attendance when the testimony was given to the court reporter. He did, however, confer with the attorneys. At the trial which is subject to this appeal Judge Biery testified as follows:

Mr. Barretto, I believe, was the first one that contacted me, it could have been Mr. Sinkin—came by a few days prior to the putting on of proof in this particular matter and basically asked if there were a convenient time when they could come by and put on proof in a case involving a wrongful death and a homeowners' policy and gave me a little bit of background on the facts. The impression I had was that it was in the nature of what we refer to as a friendly suit, where there is a minor involved and it's necessary—everybody has agreed to everything but it's necessary to go through the formalities of putting on proof because a minor was involved.

In this instance, there was no minor involved. And I believe, if my recollection is correct, that there was some mention of the fact that the problem in this case was whether there was insurance coverage or not. I believe I raised the question at that time of whether or not the insurance was going to be a party, and the response was that, well, that they would be eventually, but first the people involved, the actual parties in this action wanted to get it reduced to a judgment and then they were going to litigate whether or not there was coverage and so forth.—

Q: Okay. Were you made aware of the fact that there was a declaratory judgment suit pending?

A: No.

Q: Had you been aware that there was a declaratory judgment suit pending, would you have signed that judgment?

A: No.

Q: Why not?

A: Well, because my purpose for asking the question at the time that I was first contacted about this, it was made aware to me that this whole thing involved a real party in interest, which was an insurance company, and I asked the question, was the insurance company going to be a party to this and, therefore, resolve this whole thing, and it was represented to me that no, we're going to go ahead and get a judgment first and then we're going to decide whether there is coverage or not, bring the insurance company in and so forth. But I definitely would recall if someone had said that the insurance company had already brought a declaratory judgment action.

The testimony developed at the hearing before the court reporter consisted of three exhibits introduced by stipulation of the parties and the testimony of Patrick Groves. One exhibit deals with the damages sustained by the Groves; one is a Request for Admissions prepared by Sinkin to be answered by David, and the last exhibit contains David's answers to the requests which are sworn to only by Karam. Among other incriminating answers, David admits that he wholly ignored treatment and medication prescribed by his doctor, Eva Snead, that while acting under the influence of a behavior disorder and chemicals in his blood he picked up a knife and stabbed Sandra Groves, that he had not warned Sandra Groves of his medical condition, and that Sandra Groves died as a result of the stab wounds. He denied that the attack made on Sandra Groves was undertaken with an evil intent to harm her.

Patrick Groves testified as to the age of his deceased wife, the number of years they had been married, the number and age of their children, and the extent of the pecuniary loss as the result of the death of Mrs. Groves. Karam asked seven questions on cross examination, all of which called for a response by Groves that fortified and increased the damages caused by

the untimely and unfortunate death of Sandra Groves.

On July 21, 1983, a judgment approved as to form by Sinkin and Karam was entered against David Britt for a sum slightly in excess of $2,175,240.00. Cambridge testified that it was unaware that a judgment had been entered and filed a motion to intervene in *Groves v. Britt*. The motion was set within the 30 day plenary period provided for in TEX.R.CIV.P. 329b(d). On August 8, 1983, Cambridge's attorney testified that he received a phone call from Sinkin's office requesting that the hearing on the motion to intervene be postponed. The attorney agreed and obtained another setting. The attorney testified that after the 30 day plenary power of the trial judge had passed, he received a call from Sinkin informing him that the motion was now moot since judgment had been entered in *Groves v. Britt* and the judgment had become final.

We have grouped appellants' forty two points of error in the following manner:

1.  Cambridge waived or was estopped to assert its right to represent David Britt, because it had unequivocally denied it's obligation to represent him.
2.  Britt had the right to reject Cambridge's qualified representation.
3.  The evidence was insufficient to prove collusion and fraud of the appellants in obtaining the judgment in *Groves v. Britt.*
4.  Cambridge is bound by the final judgment rendered in *Groves v. Britt,* and was erroneously permitted to collaterally attack the judgment.
5.  That the finding by the trial court that Cambridge did not violate orders of the State Board of Insurance and it's insurance contract with the Britts is against the great weight and preponderance of the evidence.

## CAMBRIDGE'S OBLIGATION TO INDEMNIFY DAVID BRITT

The homeowners' policy contains the following provisions:

COVERAGE D—PERSONAL LIABILITY

To pay on behalf of the insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the Company shall defend any suit against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false, or fraudulent; but the Company may make such investigation and settlement of any claim or suit as it deems expedient.

EXCLUSIONS—Coverage D shall not apply:

\*  \*  \*  \*  \*  \*

5.  to bodily injury or property damage caused intentionally by or at the direction of the Insured....

The pleadings in *Groves v. Britt* alleged that because David Britt was mentally ill, he negligently caused the death of Sandra Groves by failing to take medication and refusing to seek medical attention. It was further contended that this failure impaired his mind to such an extent that he took the life of Sandra Groves by stabbing her with a knife.

The obligation of an insurance company to defend its insured is based upon the pleadings of the plaintiff. If the pleadings allege a cause of action which the company is obligated to defend under the terms of its policy, it has the duty to defend the insured regardless of the merit of the alleged cause of action. *Argonaut Southwest Insurance Co. v. Maupin,* 500 S.W.2d 633, 635–36 (Tex.1973); *Heyden Newport Chemical Corp. v. Southern General Insurance Co.,* 387 S.W.2d 22, 26 (Tex.1965). The pleadings alleged a cause of action which required Cambridge to defend David Britt.

It is the May 11, 1982, letter that appellants base their contention that Cambridge was estopped or waived its right to represent and cite in support *Womack v. Allstate Insurance Co.,* 156 Tex. 467, 296

S.W.2d 233, 236–37 (1956) and *Witt v. Universal Automobile Insurance Co.*, 116 S.W.2d 1095 (Tex.Civ.App.—Waco 1938, writ dism'd).

In *Womack*, an insured of Allstate's was sued for damages sustained in an automobile accident. The insurance company, two days prior to the institution of the suit, wrote the insured that it considered the insurance contract between the parties void and disclaimed any responsibility to defend under the policy. The insured was found liable for the damages sustained and brought suit against Allstate to satisfy the judgment under the policy. Allstate responded that the insured had not given proper notice under the contract, and, therefore, it was not liable under the terms of the policy. The court held, as a matter of law, the unconditional denial of the insurance contract between the parties constituted a waiver of compliance by the insured with the provision of the policy requiring notice.

Unlike *Womack*, Cambridge attempted to represent David Britt, albeit with reservation, at the inception of the lawsuit.

In *Witt*, suit was instituted by Witt against both the insured and the insurance company. A dispute arose between the insured and the attorneys for the insurance company. The insurance company wrote the insured that it would not represent him because of his lack of cooperation and a conflict of interest between the two. Plaintiff nonsuited the insurance company. Two days prior to the trial, the insurance company informed the insured that, since it had been nonsuited, the conflict of interest no longer existed and that it would represent him. The insured refused the offer of representation. Witt prevailed in the lawsuit but was unable to collect the judgment from the insured. Witt sued the insurance company and it answered that it had failed to represent the insured because the insured would neither cooperate nor permit it to represent him. The court held that the insurer had waived its right to reenter the case at such a late date and take charge of the defense.

Unlike *Witt*, when the Groves brought suit against the Britts, Cambridge immediately responded by filing an unequivocal answer on behalf of David Britt's parents and one with reservation on behalf of David Britt.

■ Waiver frequently has been defined as the voluntary, intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. *Massachusetts Bonding & Insurance Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 401 (Tex.1967). Estoppel arises where, by the fault of one, another has changed position for the worse. *Wirtz v. Sovereign Camp W.O.W.*, 114 Tex. 471, 268 S.W. 438, 441 (1925). Although Cambridge first denied its responsibility, it did not relinquish the right to represent David because it did, with reservation, attempt to defend him. David acknowledged this fact when he took exception to the limited representation and by motion requested Cambridge to fully defend him or get out of the lawsuit. Karam entered the lawsuit as the attorney for David *after the answer had been filed by Cambridge*. To that time, there had been no change of position to the detriment of David.

■ It was proper for Cambridge to notify David that it was representing him on the condition that it was doing so with a reservation of its rights. The reservation of rights served as a notice to David of the potential conflict of interest. *See Employers Casualty Co. v. Tilley*, 496 S.W.2d 552 (Tex.1973). "A reservation of rights is proper if the insurer believes, in good faith, that the complaint alleges conduct which may not be covered by the policy." *Rhodes v. Chicago Insurance Co.*, 719 F.2d 116, 120 (5th Cir.1983). This notice is required by Canon 5 of the Code of Professional Responsibility. By the same token, David had the privilege of rejecting the limited representation and hiring a lawyer of his own choosing and looking to Cambridge for the payment of the attorney's fees. *Rhodes* 719 F.2d at 120.

■ The trial court erred in holding that there was no conflict of interest on behalf of Cambridge but ruled correctly that Cambridge had not waived its right or was estopped from filing the answer, with reservation on behalf of David Britt.

Appellants contend, since the criterion of insanity is different in a criminal case from that of a civil case, the original judgment cannot be used to collaterally estop the Groves from enforcing the judgment granted in *Groves v. Britt.* In addition, a criminal conviction is not *res judicata* or estoppel by judgment to a subsequent civil suit. *State v. Benavides,* 365 S.W.2d 638, 640 (Tex.1963).

Appellants' contend that the evidence was insufficient for the trial court to find that the taking of the life of Mrs. Groves was intentional. In passing on the sufficiency of the evidence, we use as our standard *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

We disagree.

■ Once an insurer has pled an exception to the insurance policy, the burden is on the insured to prove that the occurrence in question did not come within the exclusion of the policy. TEX.R.CIV.P. 94, *Shaver v. National Title & Abstract Co.,* 361 S.W.2d 867 (Tex.1962).

Cambridge introduced into evidence the indictment, charge of the court, and judgment finding David guilty of the murder of Sandra Groves. At the criminal trial, David contended he was insane at the time of the homicide. The jury, however, found him sane, and further found that he had intentionally taken the life of Sandra Groves.

■ Texas Rules of Evidence 803(23) provides that a judgment, entered after a trial or upon a plea of guilty adjudging a person guilty of a felony is admissible to prove any fact essential to sustain the judgment of conviction. We are not prepared to state that the prior judgment which found David intentionally killed Sandra Groves collaterally estops the appellants in their attempt to enforce the subsequent final judgment which found David negligently caused the death of Sandra Groves. We do, however, hold that the prior criminal judgment was admissible in the case under consideration as evidence of Cambridge's contention that David Britt's actions were intentional and thus within the exception to the insurance policy.

Appellants contend that appellants cannot collaterally attack the judgment in *Groves v. Britt.* Cambridge asserts that David not only failed to conduct a reasonable defense, but that the parties colluded to defraud Cambridge.

■ A party seeking to invoke the doctrine of collateral estoppel must establish (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984). In *Coblentz v. American Surety Co. of New York,* 416 F.2d 1059, 1063 (5th Cir.1969) the Court, quoting 27 Am.Jur. *Indemnity* § 35 stated that:

> It is a well-settled principle that where a person is responsible over to another, either by operation of law or express contract, and he is duly notified of the pendency of the suit against the person to whom he is liable over, and full opportunity is afforded him to defend the action, the judgment, if obtained without *fraud* or *collusion,* will be conclusive against him, whether he appeared or not. (Emphasis ours.)

*See also Warren Petroleum Corp. v. J.W. Green Contractors,* 417 F.2d 242 (5th Cir. 1969).

Appellants' reason for removing the attorney hired by Cambridge to defend David Britt was a conflict of interest between the insurance company and David Britt. The RESTATMENT (2d) OF JUDGMENTS § 57 (1982) provides in pertinent part:

§ 57. Effect on Indemnitor of Judgment Against Indemnitee

(1) Except as stated in Subsection (2), when one person (the indemnitor) has an obligation to indemnify another (the indemnitee) for a liability of the indemnitee to a third person, and an action is brought by the injured person against the indemnitee and the indemnitor is given reasonable notice of the action and an opportunity to assume or participate in its defense, a judgment for the injured person has the following effects on the indemnitor in a subsequent action by the indemnitee for indemnification:

(a) The indemnitor is estopped from disputing the existence and extent of the indemnitee's liability to the injured person; and

(b) The indemnitor is precluded from relitigating issues determined in the action against the indemnitee if:

(i) the indemnitor defended the action against the indemnitee; or

(ii) the indemnitee defended the action with due diligence and reasonable prudence.

(2) If there is a conflict of interest between the indemnitee and the indemnitor regarding the injured person's claim against the indemnitee, so that the indemnitor could not properly have assumed the defense of the indemnitee, a judgment for the injured person precludes the indemnitor only with respect to issues determined in that action as to which:

(a) there was no conflict of interest between the indemnitee and the indemnitor; and

(b) *the indemnitee conducted a defense with due diligence and reasonable prudence.*

(3) A 'conflict of interest' for purposes of this Section exists when the injured person's claim against the indemnitee is such that it could be sustained on different grounds, one of which is within the scope of the indemnitor's obligation to indemnify and another of which is not.

■ We agree that the evidence was sufficient for the trial court to find that David Britt failed to conduct a reasonable defense and that the parties colluded to defraud Cambridge. Therefore, the doctrine of collateral estoppel cannot be raised by the appellants.

## ALLEGED VIOLATIONS OF INSURANCE REGULATIONS

Appellants raise both factual and legal insufficiency points of error regarding the trial court's following findings of fact:

1. Cambridge's handling of the matters surrounding David Britt's act and the resulting claims against him was not in bad faith;

2. Cambridge did not violate the rules and regulations of the State Board of Insurance of Texas on unfair competition and unfair practices of insurers;

3. Cambridge did not materially misstate the law;

4. Cambridge's general business practices do not violate State Board of Insurance's Board Orders.

■ The finding that Cambridge did not deal with David Britt's case in bad faith was not so against the great weight and preponderance of the evidence as to be manifestly unjust. The record contains evidence that Cambridge's representative Richard Scott Taylor believed in good faith that David Britt intentionally stabbed and killed his aunt Sandra Groves. The insurance policy excluded intentional acts from coverage. Taylor's actions were therefore reasonable under the policy.

The rules and regulations of the State Board of Insurance of Texas on unfair competition and unfair practices of insurers, to which appellants refer, prohibit insurance companies, as a general business practice, from the following:

1. misrepresenting to claimants pertinent facts or policy provisions relating to coverage at issue;

2. failing to adopt and implement reasonable standards for prompt investigation of claims arising under its policies;

3. not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear;

4. refusing to pay claims without conducting a reasonable investigation based on all available information.

Board Order 41454.003

 Appellants fail to refer this court to any material misrepresentation of the facts or policy provisions relating to coverage. Whether Cambridge's standards for prompt investigation of claims are reasonable is a fact question, and there is evidence supporting the reasonableness of the investigation. Whether Cambridge attempted to negotiate a settlement in good faith and whether its liability was or was not reasonably clear are both fact questions. Evidence can be found in the record to support the reasonableness of Cambridge's good faith position of non-liability. Thus, refusal to settle was not unreasonable or in bad faith. Finally, the reasonableness of Cambridge's investigation into the incident was likewise a fact question. There being ample evidence in the record to support the finding of such reasonableness, we hold that the evidence was neither factually nor legally insufficient to support the trial court's findings.

Appellants' assertion that Cambridge materially misstated the law regarding its duty to defend claims, prior to the bringing of the claims and without regard to what the claims were, is without merit. It is no misstatement of the law to state that Cambridge had no duty to defend against intentional acts of the insured. Nor is it a misstatement to say that where a suit is filed on negligence grounds and where there may be a conflict of interest, then Cambridge is entitled to offer a qualified defense. Such were the statements made by Cambridge, and the trial court's finding of no material misstatement of law was not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

Appellants' contention that Cambridge's general business practices violated the State Board of Insurance's Board Orders is also without merit. The record does not support the appellant's assertion that Cambridge violated the board orders even once, much less as a general business practice. The evidence on which the trial court based its finding to that effect was neither factually nor legally insufficient.

The judgment is affirmed.

CADENA, Chief Justice.

I agree that the judgment should be affirmed. As the majority opinion correctly holds, the insurer is not bound by the determination in the suit by the plaintiffs against David Britt that David Britt was negligent. Since no evidence of David Britt's negligence was presented, there is no basis for holding the insurance company liable.