**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**
**No. 91-6152**

**COLUMBIA MUTUAL INSURANCE COMPANY,**
**formerly known as COLUMBIA MUTUAL**
**CASUALTY INSURANCE COMPANY,**

**Plaintiff-Appellant,**

**VERSUS**

**FIESTA MART, INC.,**

**Defendant-Appellee.**

_____

**Appeal from the United States District Court**
**for the Southern District of Texas**

_____
(March 26, 1993)

Before WILLIAMS, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

Columbia Mutual Insurance Company appeals the summary judgment awarded its insured, Fiesta Mart, Inc., in Columbia's declaratory judgment action on its liability (coverage) for a state court judgment against Fiesta. Because the state court findings in issue -- incorporating coverage terms from the Columbia policy -- were not essential to the state court judgment, and because privity is lacking between Columbia and Fiesta, Columbia is not collaterally estopped from relitigating those findings. And, because the Columbia policy does not cover the damages awarded by the state court, we **REVERSE** and **RENDER** in favor of Columbia on its

declaratory judgment claim, and **REMAND** for disposition of the remaining claims.[1]

I.

From April 23, 1987, to April 22, 1988, Columbia was an excess insurer for Fiesta, which owns and operates a chain of grocery stores in the Houston area that caters to the Hispanic community. From 1982 to 1988, Fiesta leased vendor locations in its stores to Monytron, Inc., which offered financial services to Fiesta's customers. Unknown to Fiesta, Monytron was defrauding customers by siphoning deposits and investments through a "Ponzi scheme", involving the illegal conversion of pesos to dollars.[2]

Beginning in late 1988, hundreds of aggrieved customers sued both Monytron and Fiesta in a state court class action, claiming violations of the Texas Securities Act, Tex. Rev. Civ. Stat. Ann. art. 581-1 *et seq.*, the Texas Deceptive Trade Practices Act (DTPA), Tex. Bus. & Com. Code Ann. § 17.01 *et seq.*, common law fraud, negligence, and gross negligence. In addition to economic losses, the plaintiffs claimed damages for mental anguish (some with

---

[1]    Fiesta counterclaimed against Columbia for breach of contract, breach of a duty of good faith and fair dealing, violations of the Texas Insurance Code, negligence, and gross negligence. Columbia then counterclaimed for attorneys' fees, alleging that Fiesta's counterclaims were "groundless and brought in bad faith or for the purpose of harassment". The district court issued a 28 U.S.C. § 1292(b) certificate on the summary judgment, which we construed as a Fed. R. Civ. P. 54(b) certificate; and it stayed the counterclaims pending this appeal. On remand, Fiesta's counter-claims should, of course, be dismissed.

[2]    A Ponzi scheme is "an investment swindle in which some early investors are paid off with money put up by later ones in order to encourage more and bigger risks". **Webster's Ninth New Collegiate Dictionary** 914 (1990).

physical manifestations) resulting from the "traumatic loss". Columbia received notice of the action in December 1988; and in January 1989, it issued a reservation of rights letter, reserving any coverage defenses in the event Fiesta was found liable. Furthermore, it did not provide a defense to Fiesta.[3]

The plaintiffs sought approximately $100 million. But, on August 31, 1990, 17 days before trial was to begin, Fiesta advised Columbia that the case could be settled for $7 million and demanded that Columbia either accept or deny coverage by September 6. Columbia elected to stand on its prior reservation of rights.

That "trial" began and ended on September 17. It lasted only one hour, and consisted solely of the admission, without objection, of several volumes of packaged exhibits. The next day, the district court entered findings of fact and conclusions of law, which had been agreed upon, drafted, and submitted by the parties before trial, holding Fiesta liable in the amount of $7 million[4] for unknowing violations of §§ 17.46(b)(2) and (3) of the DTPA and

---

[3]    The parties dispute who did provide the defense. Columbia contends that CIGNA Property and Casualty Company, which provided Fiesta's primary liability coverage during the Columbia policy period, provided defense through its affiliated claims servicing organization, ESIS, Inc. Fiesta denies that either CIGNA or ESIS defended it. The Hartford Casualty Insurance Company, which provided primary liability coverage for the policy period preceding CIGNA's, acknowledged a duty to defend Fiesta and paid a portion of the defense costs.

[4]    The findings and conclusions refer to the judgment as a "compromise agreement" between the parties; and, if promptly paid, Fiesta would be released from liability for prejudgment interest.

ordinary negligence.[5]

Fiesta satisfied the judgment and demanded indemnity from Columbia.[6]  Columbia responded by initiating this action in November 1990, seeking a declaratory judgment that it had no duty to indemnify Fiesta.  On cross motions for summary judgment, the district court ruled for Fiesta, holding that Columbia was obligated to indemnify it for the judgment.

## II.

Among other contentions, Columbia maintains that the district court erred in ruling (1) that Columbia was collaterally estopped from relitigating the state court's factual findings, and (2) that

---

[5]   Section 17.46(a) makes unlawful false, misleading, or deceptive acts or practices in the conduct of any trade or commerce.  Section 17.46(b) provides, in relevant part:

> (b)  [T]he term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:  ...
>
>      (2)  causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
>      (3) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another; ....

Tex. Bus. & Com. Code Ann. § 17.46.

[6]   The findings stated that $5.5 million of the damages were caused during the Columbia/CIGNA policy period (April 23, 1987, to April 22, 1988).  The remaining $1.5 million in damages was attributed to the Hartford policy period, and was paid by Hartford. Fiesta demanded $4.5 million with interest from Columbia, representing the amount exceeding Fiesta's $1 million primary coverage limit under the CIGNA policy.

the Columbia policy provided coverage for the damages awarded.[7]
Needless to say, we apply Texas law in deciding these issues. ***Erie R. Co. v. Tompkins***, 304 U.S. 64 (1938); ***Allison v. ITE Imperial Corp.***, 928 F.2d 137, 138 (5th Cir. 1991). And, because these are issues of law, we review the district court's conclusions *de novo*. ***Enserch Corp. v. Shand Morahan & Co.***, 952 F.2d 1485, 1492 (5th Cir. 1992). Moreover, such *de novo* review is also required because a summary judgment is at issue. *E.g.*, ***Johnson v. Odom***, 910 F.2d 1273, 1277 (5th Cir. 1990), *cert. denied*, 111 S.Ct. 1387, \_\_\_ U.S. \_\_\_ (1991).

A.

It is well-settled in Texas that when an insurer breaches a duty to defend its insured, it is bound, in subsequent proceedings, by a settlement or judgment rendered against the insured. ***Rhodes v. Chicago Ins. Co.***, 719 F.2d 116, 120 (5th Cir. 1983). But, of course, an insured's liability and whether there is concomitant coverage are "separate and distinct" matters; and a prior judgment establishing liability is not binding in a subsequent proceeding on coverage. ***Employers Casualty Co. v. Block***, 744 S.W.2d 940, 943

---

[7] Columbia also asserts, with considerable force, that the state court's findings were the product of collusion between the underlying parties and, thus, not binding on it. *See* ***Coblentz v. American Surety Co. of New York***, 416 F.2d 1059, 1063 (5th Cir. 1969); ***Britt v. Cambridge Mutual Fire Ins. Co.***, 717 S.W.2d 476, 483 (Tex. App.--San Antonio 1986, writ ref'd n.r.e.). Additionally, it contends that it had no duty to defend Fiesta, under a policy exclusion, because an "other insurer" at all times had a duty to defend it, or, if not, that Fiesta breached a duty to maintain primary coverage containing such a duty. Because collateral estoppel does not apply for the reasons stated *infra*, we need not address these alternative contentions.

(Tex. 1988); *see also* **Enserch**, 952 F.2d at 1493. Furthermore, whether an insurer is bound by a specific finding from the liability action -- *i.e.*, whether it is collaterally estopped from contesting that finding -- depends upon "whether the fact determined in the prior suit was essential to the judgment in the prior suit, and whether the necessary requirement of privity exists between the parties". **Block**, 744 S.W.2d at 943; *see also* **Edinburg Consolidated I.S.D. v. INA**, 806 S.W.2d 910, 913-14 (Tex. App.-- Corpus Christi 1991, no writ). Assuming, without deciding, that Columbia breached a duty to defend Fiesta, we hold that it is not bound by the hereinafter-described state court findings in issue, because they were not essential to the liability judgment and because the requisite privity was lacking.

The state court finding upon which Fiesta relies states: "An *occurrence* of Fiesta Mart, Inc.'s act of negligence and negligently causing confusion and misunderstanding and the *continuous exposure* to that *occurrence* ... proximately caused and produced resulting *property damage* and *bodily injury* and recoverable attorneys' fees ...". (Emphasis added.) Although coverage was not at issue in the state court litigation, this language virtually mirrors that contained in the relevant coverage provisions of the Columbia policy.[8]  Additionally, as noted, the findings precisely

--------

[8]  Columbia's basic coverage clause provides:

COVERAGE:  The Company hereby agrees to indemnify the Insured against such ultimate net loss in excess of the Insured's primary limit as the Insured sustains by reason of liability, imposed upon the Insured by law or assumed by the Insured under contract, for damages because of

apportioned the damages between the applicable policy periods, stating that $5.5 million and 80% of the court costs were "proximately caused and produced" between April 23, 1987, and April 22, 1988 (the Columbia policy period).

The characterizations of Fiesta's actions as an "occurrence" and the damages as "bodily injury" and "property damage" were not essential to determining Fiesta's liability. *See **Block***, 744 S.W.2d at 943 ("the recitation in the agreed judgment that the `[plaintiffs] sustained property damage ... as a result of an occurrence on [a specific date within the policy period]' was not essential in determining [the insured's] liability"). Furthermore, there was no valid reason for the court to apportion the damages between the applicable policy periods. ***Id***. To maintain an action

personal injury or property damage to which this policy applies, caused by *an occurrence* anywhere in the world.

(Emphasis added.)  The policy defined "occurrence" as follows:

"OCCURRENCE" means an accident, including *continuous or repeated exposure* to conditions, which results in *personal injury or property damage* neither expected nor intended from the standpoint of the Insured.  All personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

(Emphasis added.)  An endorsement to the policy modified the definition of "personal injury" to conform to the "bodily injury" clause in the underlying (CIGNA) primary policy.  "Bodily injury", as defined in that policy and, thus, incorporated in the Columbia policy, means

*bodily injury*, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

(Emphasis added.)

under the DTPA, a consumer need only prove that a deceptive act or practice was a "producing cause" of "actual damages". Tex. Bus. Com. Code Ann. § 17.50(a). Similarly, negligence requires only proof of "a duty of reasonable care, breach of that duty, and damages resulting from the breach." *Hayes v. United States*, 899 F.2d 438, 443 (5th Cir. 1990).

Additionally, because "the respective positions of [Columbia and Fiesta] regarding coverage were in conflict", the parties were not in privity. *Block*, 744 S.W.2d at 943; *see also* *Cluett v. Medical Protective Co.*, 829 S.W.2d 822, 827 (Tex. App.--Dallas 1992, writ denied).[9]

Accordingly, we conclude that the findings in issue are not binding on Columbia and, therefore, do not preclude it from litigating coverage in this case. Thus, we turn to whether the Columbia policy covers the damages awarded against Fiesta.

### B.

As noted, Columbia contracted to indemnify Fiesta for liability resulting from an "occurrence", defined as "an accident, including continuous or repeated exposure to conditions, which results in [bodily] injury or property damage neither expected nor intended from the standpoint of the Insured". For the following

---

[9]    Fiesta's reliance on *U.S. Aviation Underwriters, Inc. v. Olympia Wings, Inc.*, 896 F.2d 949 (5th Cir. 1990) for the proposition that it was in privity with Columbia is misplaced. In that case, we recognized only that "an insurer which is obliged to defend its insured but flatly refuses to do so is considered in privity with the insured on all *essential* issues in the underlying action". *Id.* at 955 (emphasis added).

reasons, we hold that the injuries found for the class action plaintiffs were not caused by an "occurrence".

The alleged "conditions" to which the class action plaintiffs were exposed through Fiesta's negligence and DTPA violations were the fraudulent activities of Monytron. In their complaint, the class action plaintiffs described these activities as "a malicious scheme ... to defraud class members by inducing them through false representations and false promises to place their savings or investments in `Monytron'". Although Fiesta attempts to characterize the occurrence as exposure to *its own* negligent and unknowing acts, its liability is clearly "related [to] and interdependent" on Monytron's fraud. ***Old Republic Ins. Co. v. Comprehensive Health Care Assoc's., Inc.***, 786 F. Supp. 629, 632 (N.D. Tex. 1992). Without that fraud, there would have been no basis for suit against Fiesta; thus, the "ultimate issue" is whether the policy covers Monytron's fraudulent activities. *See id.* (in claim against employer for negligence with respect to employee's sexual harassment of fellow employee, "occurrence" refers to employee's harassment, not employer's negligence); *see also **Thornhill v. Houston Gen. Lloyds***, 802 S.W.2d 127, 130 (Tex. App.--Fort Worth 1991, no writ); ***Centennial Ins. Co. v. Hartford Accident and Indemnity Co.***, 821 S.W.2d 192, 194 (Tex. App.--Houston [14th Dist.] 1991, no writ); ***Fidelity and Guaranty Ins. Underwriters, Inc. v. McManus***, 633 S.W.2d 787, 790 (Tex. 1982).

Although we find no guidance from the Texas Supreme Court on whether exposure to fraud constitutes an occurrence under the above

- 9 -

definition, we agree with the conclusion of the Texas Court of Appeals in a substantially similar matter, *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 155-56 (Tex. App.--Houston [1st Dist.] 1990, writ denied), which held that it does not. In that case, also a declaratory judgment action by an insurer, the insured had been sued by investors for economic losses, among other things, resulting from the insured's alleged fraud with respect to a limited partnership venture. In determining whether there was "bodily injury", and applying an occurrence clause identical to Columbia's, the court held that "exposure to `fraudulent promises, false representations, and untrue statements' does not, as a matter of law, fall within the plain meaning of the definition of `occurrence'". *Id.* at 156. It explained that "[t]o hold otherwise would require us to unnaturally extend the definition of the term `conditions,' and consequently, the definition of `bodily injury'". *Id.*

Turning to whether the plaintiffs' lost investments constituted "property damage" under the policy, the court noted that the same definition of "occurrence" was applicable. But, instead of first determining whether there was an occurrence, it ruled that the loss was not "property damage". *See id.* In *Royal Ins. Co. of America v. Quinn-L Capital Corp.*, 960 F.2d 1286, 1295 (5th Cir. 1992), we interpreted a similar holding to preclude coverage solely for lack of an occurrence, regardless of bodily

injury or property damage.[10]  We emphasized that, under an identical definition of "occurrence", *both* an occurrence *and* an injury are required for coverage.  *Id.*  Therefore, because we hold that exposure to Monytron's fraud does not constitute an "occurrence", we need not address whether the damages found by the state court constitute "bodily injury" or "property damage".

III.

For the foregoing reasons, the summary judgment is **REVERSED**, and judgment is **RENDERED** in favor of Columbia on its declaratory judgment (coverage) claim.  Because there are additional claims pending in the district court, we **REMAND** for their disposition.

**REVERSED, RENDERED and REMANDED.**

---

[10]   In *Quinn-L*, the district court held both that alleged personal injuries, in the form of mental anguish, were not caused by an occurrence, and that lost investments did not constitute property damage.  960 F.2d at 1295.