United States Court of Appeals,

Fifth Circuit.

No. 95-21048.

NEW YORK LIFE INSURANCE COMPANY, Plaintiff-Appellant,

v.

The TRAVELERS INSURANCE COMPANY and The Travelers Indemnity Company,
Defendants-Appellees.

Aug. 23, 1996.

Appeal from the United States District Court for the Southern District of Texas.

Before KING, SMITH and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

New York Life Insurance Company ("NYL") brought this action against The Travelers

Indemnity Company and The Travelers Insurance Company ("Travelers") for an alleged breach of

two insurance agreements.  The parties submitted cross-motions for summary judgment limited to

the issue of Travelers's duty to defend under the insurance policy.  The district court referred the case

to a magistrate judge, who concluded that Travelers owed no duty to defend NYL.  The district court

adopted the magistrate judge's Memorandum and Recommendation and granted summary judgment

for Travelers.  The sole issue on appeal is whether Travelers owed NYL a duty to defend.  We affirm.

I.

Travelers provided NYL with a comprehensive general liability policy and excess liability

coverage umbrella policy.  This dispute arises out of Travelers's refusal to defend and indemnify NYL

in a lawsuit filed by Lamar Hernandez ("Mrs. Hernandez") against NYL and Oscar Herrera, a former

agent in NYL's Corpus Christi office.  Mrs. Hernandez alleged that Herrera engaged in a scheme

whereby he misused $100,000 that he persuaded the Hernandezes to invest.[1]  The suit sought

---

[1]The Hernandez suit alleged a scheme whereby Herrera defrauded Mrs. Hernandez into
purchasing a $100,000 face value life insurance policy on her life.  Unbeknownst to the
Hernandezes, Herrera actually sold them a whole life policy with a face value of $1,000,000 and
with premium obligations in excess of $28,000 per year.  Herrera withdrew money from annuities

1

recovery for economic loss, mental anguish, punitive damages, and statutory penalties.

The complaint alleged that Herrera and NYL jointly had engaged in fraudulent and misleading conduct relating to the sale of the insurance policy. In addition, it alleged that NYL negligently failed to follow its own underwriting guidelines and other internal policies, failed to formulate, adopt, and enforce adequate rules and policies, and was negligent in the hiring, training, and supervision of Herrera.

The jury in the state court suit returned a verdict against NYL for $1,060,000 in actual damages and $15,000,000 in punitive damages. NYL settled with Mrs. Hernandez for an amount in excess of the aggregate limit of the Travelers policies.

## II.

We review a grant of summary judgment *de novo. Hanks v. Transcontinental Gas Pipe Line Corp.,* 953 F.2d 996, 997 (5th Cir.1992).[2] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c).

In Texas, insurance policies are construed according to ordinary contract principles. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994). The interpretation of an insurance policy is a question of law. *Coker v. Coker,* 650 S.W.2d 391, 393-94 (Tex.1983).

Texas courts follow the "Eight Corners" or "Complaint Allegation" rule when determining whether there is a duty to defend. *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.,* 1 F.3d 365, 369 (5th Cir.1993). "This rule requires the trier of fact to examine only the allegations in the [underlying] complaint and the insurance policy in determining whether a duty

owned by the Hernandezes to pay the first and second years' premiums on the policy. Mrs. Hernandez did not become aware of Herrera's fraud until over two years later, when she received notices from NYL that the policy would lapse unless she paid the $28,000 premium installment for the third year.

[2]Final judgment in this case was entered before our decision in *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415 (5th Cir.1996) (en banc).

2

to defend exits." *Id.* It is inappropriate to consider "facts ascertained before the suit, developed in the process of the litigation, or by the ultimate outcome of the suit." *Id.* The duty to defend is determined by examining the latest amended pleadings. *Rhodes v. Chicago Ins. Co.,* 719 F.2d 116, 120 (5th Cir.1983).

The duty to defend arises when the facts alleged in the petition, if taken as true, potentially state a cause of action within the terms of the policy. *Gulf Chem.,* 1 F.3d at 369. An insurer is obligated to defend if the petition alleges at least one cause of action within the policy's coverage. *Rhodes,* 719 F.2d at 119. The insured bears the burden of showing that the claim against him is potentially within his policy's coverage. *Sentry Ins. v. R.J. Weber Co.,* 2 F.3d 554, 556 (5th Cir.1993).

A.

The applicable policy provision states that Travelers agrees to pay on behalf of NYL

all sums which the *insured* shall become legally obligated to pay as damages because of

> Coverage A. *bodily injury* or
>
> Coverage B. *property damage*

to which this insurance applies, caused by an *occurrence,* and the company [Travelers] shall have the right and duty to defend any suit against the *insured* seeking damages on account of such *bodily injury* or *property damage,* even if any of the allegations of the suit are groundless, false or fraudulent....

An "occurrence" under the policy is "an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured*...."

The magistrate judge determined that the Hernandez suit did not allege a covered "occurrence," as neither Herrera's nor NYL's alleged conduct could be construed as accidental in nature. The magistrate judge's recommendation was based on the conclusion that, under Texas law, there cannot be a covered occurrence where a principal's liability arises out of an intentional tort committed by its agent.

Neither party contests the conclusion that an intentional tort by the insured falls outside the

3

definition of "occurrence."  In addition, neither party suggests that Herrera did not intend or expect the injury he caused.  The only area of dispute is the magistrate judge's conclusion that an agent's intent will be imputed to a principal for purposes of determining whether there is an "occurrence" under the policy.  We begin, and end, our inquiry with that threshold issue.

## B.

As the magistrate judge correctly concluded, the result in this case is directly controlled by *Columbia Mut. Ins. Co. v. Fiesta Mart, Inc.,* 987 F.2d 1124 (5th Cir.1993), which involved facts strikingly similar to this case.  The underlying lawsuit in *Fiesta Mart* was brought by a number of plaintiffs who had been defrauded by Fiesta Mart's agent in a "Ponzi scheme."  Columbia Mutual Insurance Company refused to defend Fiesta Mart in the state court suit, and Fiesta Mart eventually lost at trial.  *Id.* at 1126.  In a subsequent declaratory judgment action, the district court found that Columbia was obligated to defend Fiesta Mart.  *Id.* at 1126.

We reversed, finding that the coverage provision, identical to the one in this case, did not include intentional acts.  *Id.* at 1128.  Although the complaint alleged negligent and unknowing acts by the insured, we held that the insured's liability was "related" and "interdependent" to the agent's fraud.  *Id.* (citing *Old Republic Ins. Co. v. Comprehensive Health Care Assocs., Inc.,* 786 F.Supp. 629, 632 (N.D.Tex.1992).  Because the suit would never have occurred absent the fraud, we found that "the "ultimate issue' is whether the policy covers [the agent's] fraudulent activities."  *Id.*  As to that question, we determined that fraud does not, as a matter of law, fall within the plain meaning of the definition of "occurrence."  *Fiesta Mart,* 987 F.2d at 1128.

## C.

NYL contends that *Fiesta Mart* is distinguishable on several grounds.  We disagree.

## 1.

We reject NYL's assertion that *Fiesta Mart* is distinguishable because it involved a duty to pay rather than to defend.  NYL bases its argument on the fact that the standard for analyzing a duty to pay is significantly different from that of a duty to defend;  the duty to defend is broader than the

4

duty to pay. In particular, "[u]nlike the duty to [pay], which is based upon the underlying facts that result in the insured's liability, the duty to defend is not affected by the facts of the case ascertained before, during or after the suit." *Cluett v. Medical Protective Co.,* 829 S.W.2d 822, 829 (Tex.App.—Dallas 1992, writ denied). From the difference in standards, the appellant concludes that *Fiesta Mart* is inapplicable to a duty-to-defend claim.

The flaw in NYL's argument is that the *Fiesta Mart* court relied not on the more permissive legal standard available in duty-to-pay claims, but solely on an interpretation of "occurrence" in the contract. 987 F.2d at 1128-29. The court's *legal* conclusion—that a negligent act by the insured is not an "occurrence" if it is interdependent and related to an agent's intentional act—was in no way based on the underlying facts of the state court lawsuit. Because the case was not decided under a more permissive legal standard, the attempt to distinguish it on that ground is pointless.

2.

NYL's attempt to distinguish *Fiesta Mart* because it involved a "sham" trial is also unpersuasive. The fact that the underlying trial was collusive was of no relevance to the court's interpretation of the contract. In fact, the only relevance of the "sham" proceeding was with regard to the collateral estoppel effect of the state court proceedings on the coverage dispute. *See Fiesta Mart,* 987 F.2d at 1126 n. 7 (discussing the relevance of the "sham" trial to the issues on appeal).

3.

NYL's third factual distinction is also unavailing. It asserts that its liability to Hernandez was causally *independent* of its agent's misconduct. For support, it points out that the Hernandez petition described NYL's negligent hiring, training, and supervision as distinct and independent causes of Mrs. Hernandez's injury. NYL argues that but for its alleged negligence, Mr. Hernandez never would have been damaged, either because NYL could have prevented the fraud or because NYL could have discovered it before Mrs. Hernandez suffered any emotional distress.

NYL's characterization of the "interdependent" requirement is foreclosed by *Fiesta Mart.* A claim against a principal is "related" to and "interdependent" on a claim against an agent if the claim

against the principal would not exist absent the claim against the agent. *Old Republic,* 786 F.Supp. at 632. *See also GATX Leasing Corp. v. National Union Fire Ins. Co.,* 64 F.3d 1112, 1118-19 (7th Cir.1995) (collecting Texas cases). This is evident from the following statement in *Fiesta Mart:* "Although Fiesta attempts to characterize the occurrence as exposure to *its own* negligent and unknowing acts, its liability is clearly "related [to] and interdependent" on Monytron's fraud. Without that fraud, there would have been no basis for suit against Fiesta...." 987 F.2d at 1128 (citations omitted). It is also evident from the cases the court cited for support.[3]

4.

NYL's next argument is that *Fiesta Mart* is not binding on this court because it misinterprets Texas law and is contradicted by a later Fifth Circuit opinion,[4] and a subsequent state court opinion. Only the third reason is remotely persuasive, for even if we disagreed with the *Fiesta Mart* decision, we are bound to follow it. *See Texas Refrigeration Supply v. FDIC,* 953 F.2d 975, 983 (5th Cir.1992).

Thus we are left with NYL's most persuasive argument, that *Fiesta Mart* is no longer binding precedent because of a subsequent state court decision. Again, NYL just misses the mark, because *Trinity Universal Ins. Co. v. Cowan,* 906 S.W.2d 124 (Tex.App.—Austin 1995, writ granted), does not call into question the holding of *Fiesta Mart.*

*Trinity* stands for the proposition that an intentional act may be an "occurrence" if the insured

---

[3]*See Old Republic,* 786 F.Supp. at 632 (finding no duty to defend insured against claim of negligent hiring when the claim of negligent hiring arises out of agent's intentional sexual harassment); *GATX,* 64 F.3d at 1119 (finding no duty to defend or pay insured against claim of negligence when the insured's negligence allowed the intentional act that gave rise to the suit). *See also Fidelity & Guar. Ins. Underwriters, Inc. v. McManus,* 633 S.W.2d 787, 790 (Tex.1982) (defining "related and interdependent" in the context of a policy exclusion); *Thornhill v. Houston Gen. Lloyds,* 802 S.W.2d 127, 130 (Tex.App.—Forth Worth 1991, no writ) (same); *Centennial Ins. Co. v. Hartford Accident & Indem. Co.,* 821 S.W.2d 192, 194 (Tex.App.—Houston [14th Dist.] 1991, no writ) (same).

[4]NYL points out that *Western Heritage Ins. v. Magic Years Learning Ctrs. & Child Care, Inc.,* 45 F.3d 85 (5th Cir.1995), rejected the position taken by *Fiesta Mart.* That portion of *Magic Years* was an alternative holding and failed to acknowledge, let alone discuss, *Fiesta Mart.* Although we acknowledge the inconsistency in our caselaw, we are bound to follow the earlier decision. *Smith v. Penrod Drilling Corp.,* 960 F.2d 456, 459 n. 2 (5th Cir.1992).

neither intended nor expected the injury.[5] The reasoning in *Fiesta Mart* is unaffected by *Trinity,* because the two cases resolve different legal questions. *Trinity,* which involved direct acts by the insured, establishes what an insured may know before an incident becomes "intentional"; the insured must intend or expect more than the act, he must intend or expect the injury. *Fiesta Mart* resolves a different inquiry by determining whether an agent's intent or expectations will be *imputed* to a principal. In that respect, the two cases are entirely consistent: When an agent intends or expects an injury, such intent and knowledge will be imputed to the principal for purposes of determining whether there was an occurrence. Allegations within the four corners of the Hernandez petition accuse Herrera of acting intentionally and of intending or expecting his acts to produce the plaintiffs' injuries, so that Herrera's actions were not accidental and thus did not produce an occurrence for purposes of Travelers' policy.

The issues in this case are directly resolved by controlling precedent of this court. We see no legal justification for deviating from our established caselaw. For the foregoing reasons, the judgment is AFFIRMED.

---

[5]906 S.W.2d at 129 ("We hold that an occurrence takes place where the resulting injury or damage was unexpected or unintended, regardless of whether the policyholders' acts were intentional.... Under this interpretation, if the insured did not know or anticipate that his intentional act would produce the injury, then as to the insured, the injury produced was unexpected, unforseen, and, therefore, accidental.").