United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 29, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 02-31071

730 BIENVILLE PARTNERS, LTD.,

Plaintiff - Appellant,

VERSUS

ASSURANCE COMPANY OF AMERICA,

Defendant - Appellee.

Appeal from the United States District Court
For the Eastern District of Louisiana

(02-CV-106)

Before SMITH, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant 730 Bienville Partners, Ltd. ("Bienville")

contests dismissal of its insurance coverage claim against

defendant-appellee Assurance Company of America ("Assurance") on

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

summary judgment.  For the following reasons, we AFFIRM.

## I.  Background

Bienville owns the New Orleans-based St. Louis Hotel and St. Ann Hotel, for which it purchased a single commercial property insurance policy for both properties from Assurance.  That policy included a "Civil Authority Extension," which provides coverage for sustained business income losses due to the actions of a governmental authority.  This Extension reads:

> We will pay for the actual loss of "business income" you sustained and necessary "extra expense" caused by action of civil authority that prohibits access to your premises due to direct physical loss of or damage to property, other than that at the "covered premises" caused by or resulting from any Covered Cause of Loss.  This coverage will apply for a period of up to 4 consecutive weeks from the date of that action.

After the terrorist attacks in New York and Washington, D.C. on September 11, 2001, the Federal Aviation Administration ("FAA") grounded all non-military aircraft and closed all non-military airports.  The airports reopened two days later.  Because the airports were closed, Bienville's hotels received a significant number of guest cancellations between September 11 and September 26.  The slowdown in business led Bienville to close the St. Ann Hotel from September 18 to September 26.  Although the hotels still generated approximately $200,000 in revenue between September 11 and September 26, Bienville claims to have lost $202,940 in room revenue and banquet facility food and beverage sales due to the

airport shutdown. Bienville filed a claim with Assurance for these losses, which Assurance denied.

On December 3, 2001, Bienville filed suit against Assurance in Louisiana state court for coverage under the policy. Assurance removed the suit to the Eastern District of Louisiana on January 14, 2002. Both parties moved for summary judgment, and on September 30, 2002, the district court granted Assurance's motion and denied Bienville's motion, ruling that Bienville was not entitled to coverage under the Assurance policy. Bienville timely appealed.

## II. Analysis

We review a district court's grant of summary judgment *de novo*, *N.Y. Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996), and we apply Louisiana law to this diversity suit. Under Louisiana law, the rules of interpretation for insurance contracts are as follows:

> An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. The parties' intent, as reflected by the words of the policy, determine the extent of coverage. Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Where the language in the policy is clear, unambiguous, and expressive of the intent of

the parties, the agreement must be enforced as written. However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured.

*Reynolds v. Select Properties, Ltd.*, 634 So. 2d 1180, 1183 (La. 1994) (citations omitted).

The main issue in this appeal concerns whether the FAA prohibited access to the Bienville hotels by shutting down the airports. The Civil Authority Extension provides the insured with coverage for business income losses "caused by action of civil authority that *prohibits access* to your premises due to direct physical loss of or damage to property, other than that at the 'covered premises' caused by or resulting from any Covered Cause of Loss." Therefore, the airport shutdown must have prohibited access to the Bienville properties in order for us to find that its losses are covered under the policy.

Assurance argues that the policy provision unambiguously excludes coverage because the FAA did not "prohibit access" to the Bienville hotels. It contends that the district court correctly recognized that the generally prevailing meaning of "prohibit" is "to forbid by authority or command," and the FAA never forbade guests from going to the Bienville hotels. Bienville's guests were allowed to and did stay at the hotels during the disputed period. In fact, Bienville earned $200,000 during this period.

4

Bienville responds that the term "prohibit" is broader than Assurance's interpretation. It argues that the policy can be reasonably interpreted to encompass its business losses due to the FAA shutdown. It notes that alternative definitions of "prohibit" are: "to prevent from doing or accomplishing something: effectively stop" and "to make impossible." WEBSTER'S THIRD NEW WORLD INTERNATIONAL DICTIONARY (1963). Bienville asserts that under these definitions, the policy covers the FAA's actions because the airport shutdown "prevented" or made it "impossible" for Bienville's guests to get to its hotels.

Bienville's argument is not persuasive. Under Louisiana law, we are required to give words their plain, ordinary, and *generally prevailing meaning*. The generally prevailing meaning of "prohibit" is, as noted by the district court, "to forbid by authority or command." It is undisputed that the FAA did not forbid any person to access the Bienville hotels. The FAA did not "prevent" the customers from going to the Bienville hotels because it was not "impossible" for the guests to get there. Despite assertions by Bienville that customers can only access its hotels by plane, no customer was actually prevented from getting to New Orleans. There were viable transportation options, such as automobiles and trains, even if customers chose not to use them. That these options were viable is evidenced by that fact that the hotels still operated at

5

nearly half capacity during the weeks after September 11. Therefore, it is not reasonable to interpret the FAA's actions as prohibiting access to the Bienville hotels under this policy.

Although no Louisiana case addresses civil authority extensions, the district court decision in *St. Paul Mercury Insurance Co. v. Magnolia Lady, Inc.*, 1999 WL 335371191, at *1 (N.D. Miss. Nov. 4, 1999), supports this conclusion. In *Magnolia Lady*, a casino-hotel sued for coverage for business losses after the closure of a nearby bridge resulted in an eighty percent drop in business. *Id.* The policy provision provided coverage for business losses "when a Civil Authority ... denies access to the described location because of direct physical loss or damage to property by a covered cause of loss other than at the described location." *Id.* The court denied coverage because the civil authority did not "deny access" as the "casino-hotel was accessible during the period of time the bridge was under repair, and the defendant continued operating business and accepting customers." *Id.* at *3.

As in *Lady Magnolia*, the Bienville customers had access to the hotels during the time the airports were closed, and Bienville continued to operate its business and to accept customers. Although Bienville notes that the policy language is cast in terms of an action that "denies," not "prohibits," access, it does not

6

explain how the difference in terminology would affect the determination of coverage. Consequently, Bienville has not proven it is entitled to coverage under this policy.

### III. Conclusion

Because the FAA's action did not prohibit access to the Bienville properties, it is not entitled to coverage under the Assurance policy for business losses sustained due to the events of September 11. Therefore, we AFFIRM the district court's grant of summary judgment in favor of Assurance.

7