**REVISED**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-20898

_____

CORNHILL INSURANCE PLC,
HANSA MARINE INSURANCE CO U K LTD;
ANGLO AMERICAN INSURANCE COMPANY, LIMITED;
UNDERWRITERS AT LLOYD'S LONDON,

                              Plaintiffs-Appellees,

                    versus

VALSAMIS, INC.;
CHERYL GISENTANER,

                              Defendants-Appellants.

****************************************************************

AMERICAS INSURANCE COMPANY

                              Plaintiff -Appellee

                    versus

VALSAMIS, INC.;
CHERYL GISENTANER,

                              Defendants-Appellants

****************************************************************

OCEAN MARINE INDEMNITY CO.,

                              Plaintiff-Appellee

                    versus

VALSAMIS, INC;
CHERYL GISENTANER,

                              Defendants-Appellants

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

February 7, 1997

Before KING and HIGGINBOTHAM, Circuit Judges, and LAKE[*], District Judge.

HIGGINBOTHAM, Circuit Judge:

This suit is the consolidation of three actions filed by insurers and underwriters seeking a declaration that insurance policies[1] issued to Valsamis, Inc. do not cover incidences of sexual harassment. The district court granted summary judgment for the insurers and Cheryl Gisentaner, assignee of Valsamis, Inc.'s claims and defendant in the action below, appeals. We find that the claims of sexual harassment do not raise a potential for coverage under the policies, and affirm the decision of the district court.

## I.

On October 29, 1992, Cheryl Gisentaner filed a lawsuit in Texas state court against her former employer, Valsamis Inc., her supervisor at Valsamis, Christos Papapetrou, and the president of Valsamis Inc., Dimitrios Valsamis. Gisentaner alleged that from approximately March 1992 until her resignation on September 2, 1992, Papapetrou made sexual remarks to her, touched her in an inappropriate and offensive manner, exposed himself, made threatening and obscene gestures, and eventually attempted to force

---

[*] District Judge of the Southern District of Texas, sitting by designation.

[1] The policies in question are a comprehensive general liability policy issued by Americas Insurance Company, three policies issued by Cornhill Insurance PLC providing comprehensive general liability and excess comprehensive general liability coverage, and an umbrella policy issued by Ocean Marine Indemnity Co. Appellees, plaintiffs in the action below, will be referred to as "insurers."

2

himself on her in a supply room. When she reported this behavior to Valsamis in June of 1992, he failed to address Papapetrou's conduct, tried to kiss her, asked her out repeatedly, and arranged to meet her alone under pretenses of work. In her initial complaint, Gisentaner sought damages for intentional and negligent infliction of emotional distress, tortious assault and battery, intentional and negligent invasion of privacy, and negligent hiring and supervision. Denial of coverage premised on the allegations in this complaint was sent to Valsamis on September 8, 1993. Subsequently, Gisentaner filed a first amended complaint, adding a claim for failure to maintain a safe work environment. Coverage premised on this amended complaint was denied on January 27, 1994.

The defendants in the state court sexual harassment suit settled with Gisentaner for an agreed judgment of $1,250,000, an assignment of Valsamis, Inc.'s claims against its insurers, $110,000 paid by Valsamis, Inc. to Gisentaner in consideration for the assignment, and a covenant by Gisentaner not to execute on the judgment against Valsamis. One month after the settlement, Gisentaner filed a second amended complaint which deleted all intentional tort claims.

The insurers then brought the present action, seeking a judgment declaring that they had no duty to defend against Gisentaner's state court claims and that their policies do not provide coverage for the claims settled by Valsamis and Gisentaner. Subsequently, Gisentaner filed suit against the insurers in state court as a judgment creditor of Valsamis and as an assignee of

3

Valsamis' cause of action for bad faith, insurance code violations and deceptive trade practices. Defendants in Gisentaner's state court suit included all of the plaintiffs in this declaratory judgment action and the issuers of two employer liability policies as well as the agent and broker for all of the policies.

Gisentaner attempted to dismiss this declaratory judgment action, claiming that the extra parties in the state court suit were indispensable to the federal suit and that their mandatory joinder would defeat diversity. The district court judge withheld ruling on this motion until September 26, 1995, when he denied it and also granted summary judgment in favor of the insurers.

## II.

Gisentaner claims that the district court should not have exercised jurisdiction in this case because it failed to join indispensable nondiverse parties and abused its discretion in not staying the federal suit in favor of the state court suit.

## A.

Fed R. Civ. P. 19 allows joinder of necessary parties unless that joinder would defeat diversity jurisdiction. If jurisdiction is threatened, the court must determine whether the potentially joined parties are indispensable, that is, if the court finds that, as a matter of equity and good conscience, the lawsuit cannot proceed without them. Sandefer Oil & Gas, Inc. v. Duhon, 871 F.2d 526, 529 (5th Cir. 1989). The threat of multiple litigation will not make a party indispensable but the threat of inconsistent obligations will. Shelton v. Exxon Corp., 843 F.2d 212, 218 (5th

4

Cir. 1988). Fed. R. Civ. P. 19(b) lists four factors for courts to consider in deciding whether a party is indispensable: 1) prejudice to an absent party or others in the lawsuit from a judgment; 2) whether the shaping of relief can lessen prejudice to absent parties; 3) whether adequate relief can be given without participation of the party; and 4) whether the plaintiff has another effective forum if the suit is dismissed.

Gisentaner claims that the agent and broker for the policies in this case are indispensable parties because Cornhill and OMI asserted lack of notice as a defense to coverage. Gisentaner also claims that because OMI is an umbrella policy, the issuer of its underlying employer liability policy is an indispensable party. None of the factors listed in Fed. R. Civ. P. 19(b) cut in favor of joining the parties Gisentaner identified as indispensable. The district court's decision rested solely on contractual language in the policies and those parties with an interest in the interpretation of that language were present in this action.

B.

Gisentaner also claims that the district court abused its discretion in refusing to dismiss this suit. A district court has broad discretion to retain or dismiss a declaratory judgment suit where a parallel state court suit has been filed. Brillhart v. Excess Ins., 316 U.S. 491 (1942). The breadth of this discretion was recently reaffirmed by the Supreme Court in Wilton v. Seven Falls Co., 115 S. Ct. 2137, 2144 (1995). The district court in this case found that the insurers' suits were not anticipatorily

5

filed, and that no indispensable parties were excluded.  We do not find this action to be an abuse of discretion.

## III.

Under Texas law, an insurer's duty to defend is triggered where the allegations in the plaintiff's pleadings raise a potential for coverage under the policy.  Argonaut Southwest Ins. Co. v. Maupin, 500 S.W.2d 633, 635 (Tex. 1973).  An insurer bears the burden of proving that the allegations contained in the underlying plaintiff's petition are excluded from coverage and any doubt is resolved in favor of the insured.  Adamo v. State Farm Lloyds Co., 853 S.W.2d 673 (Tex. App.-Houston 1993, writ denied), cert. denied, 114 S. Ct. (1994).  This burden includes proving that none of the claims asserted potentially fall within coverage. Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co., 387 S.W.2d 22, 26 (Tex. 1965).  The duty to defend is determined by examining the latest amended pleading upon which the insurer based its refusal to defend the action.  Rhodes v. Chicago Insurance Co., 719 F.2d 116, 120 (5th Cir. 1983).

### A.  Americas Policy

The comprehensive general liability policy issued to Valsamis by Americas covered bodily and personal injury.  For bodily injury, the policy restricted coverage to damages caused by an "occurrence," but there was no occurrence requirement for claims of personal injury.  The definition of personal injury included injury arising out of "false arrest, detention, imprisonment or malicious

6

prosecution," or "a publication or utterance . . . in violation of an individual's privacy."

Gisentaner seeks coverage for her claims in the definition of "personal injury" in the Americas policy.[2]  In her original petition in state court, Valsamis alleged invasion of privacy, which is specifically referenced as a personal injury within Americas policy.  She also now alleges that the facts in her complaint state a claim for false detention, also covered in the definition of personal injury.

Texas courts do not look to conclusory assertions of a cause of action in determining a duty to defend.  Instead, they look to see if the facts giving rise to the alleged actionable conduct, as stated within the eight corners of the complaint, constitute a claim potentially within the insurance coverage.  Adamo v. State Farm Lloyds Co., 853 S.W.2d 673 (Tex. App.-Houston 1993, writ denied).  We will therefore look to see if Gisentaner alleged facts that constitute a claim for invasion of privacy or false imprisonment under Texas law to determine whether Americas had a duty to defend.

1.  Invasion of Privacy

The Texas Supreme Court first recognized the tort of invasion of privacy in Billings v. Atkinson, 489 S.W.2d 858, 859 (Tex. 1973).  Texas law now recognizes three distinct torts, any of which

_____

[2]Gisentaner does not argue that Americas' bodily injury provision covers her claims.

7

constitutes an invasion of privacy.[3]  <u>Industrial Found. of the South v. Texas Indus. Accident Bd.</u>, 540 S.W.2d 668, 682 (Tex. 1976), <u>cert. denied</u>, 430 U.S. 931 (1977).  Gisentaner did not allege that Valsamis publicly disclosed embarrassing private facts about her or appropriated her name or likeness.  Gisentaner's allegations come closest to fitting the cause of action for invasion of privacy where there has been "intrusion upon the plaintiff's seclusion or solitude, or into his private affairs." <u>Texas Indus. Accident Bd.</u>, 540 S.W.2d at 682.  However, no Texas court has considered whether sexual harassment is cognizable under this definition, therefore we must assess whether Texas courts could find that Gisentaner stated a claim for invasion of the right to privacy.

To state a cause of action under this theory of invasion of the right to privacy, Texas case law requires proof that there was an intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that is highly offensive to a reasonable person.  <u>Farrington v. Sysco Food Serv., Inc.</u>, 865 S.W.2d 247, 252 (Ct. App.-Houston 1993); <u>Gill v. Snow</u>, 644 S.W.2d 222, 224 (Ct. App.-Ft. Worth 1982).  However, at least one Texas court has noted that this type of invasion of privacy "is generally associated with either a physical invasion of a person's property or eavesdropping on another's conversation with the aid of

---

[3]<u>Texas Indus. Accident Bd.</u> actually established four types of invasion of privacy but the Texas supreme court has since abolished the fourth, false light invasion of privacy.  <u>Cain v. Hearst Corp.</u>, 878 S.W.2d 577 (Tex. 1994)

8

wiretaps, microphones or spying." Wilhite v. H.E. Butt Co., 812 S.W.2d 1, 6 (Tex. App.-Corpus Christi 1991). Gisentaner made no such allegation in her complaint. In contrast, she alleged that Valsamis and Papapetrou made offensive comments and inappropriate advances toward her. These facts would not be cognizable as a cause of action for invasion of privacy under Texas law.

## 2. False Imprisonment

Americas' policy defines personal injury to include claims of false imprisonment. Gisentaner claims that the incident where Papapetrou tried to force himself on her in a closet at work states a cause of action for false imprisonment under Texas law. Texas law defines false imprisonment as willful detention without consent and without authority of law. Sears, Roebuck & Co. v. Castillo, 693 S.W.2d 374, 375 (Tex. 1985). However, Gisentaner alleged that Papapetrou attempted to force himself on her in an unlocked supply room accessible to other employees. She did not allege that he kept her there by physical force or by threatening her. She did not allege detention and therefore her allegations are insufficient to state a claim for false imprisonment under Texas law. See Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640 (Tex. 1995).

## B. Cornhill Policies

Unlike Americas, Cornhill's comprehensive general liability policy included an employment exclusion that applied to both bodily and personal injury. However, Cornhill's policy also contained a personal injury endorsement that extended coverage to include

liability for personal injury arising from Valsamis' shiprepairing operations.

The employment-related claim exclusion in Cornhill's policy precluded coverage for:

> Any liability of whatsoever nature of the Assured, whether the Assured may be liable as an employer or in any other capacity whatsoever, to any of its Employees, including without limiting the generality of the foregoing any liability under any workers' compensation law, unemployment compensation law, disability benefit law, United States Longshoremen's and Harbor Workers' Compensation Act, Jones Act, Death on the High Seas Act, General Maritime Law, Federal Employer's Liability Act, or any similar laws or liabilities, and/or whether by reason of the relationship of master and servant or employer and employee or not . . . [and] [a]ny liability of any Employee of the Assured with respect to bodily and/or personal injury to or illness or death of another Employee of the Assured sustained in the course of such employment.

The wording of this employment exclusion is very broad. Gisentaner's state court action complained of negligent acts by Valsamis, Inc. as her employer. Negligent hiring and supervision necessarily involve the employment relationship and therefore this exclusion precludes coverage. The injuries inflicted by Valsamis and Papapetrou all occurred while Gisentaner was employed by Valsamis and were sustained in the course of her employment and are therefore also excluded. Our interpretation of this employment exclusion is supported by Texas law. In <u>Aberdeen Ins. Co. v. Bovee</u>, 777 S.W.2d 442 (Tx. App.-El Paso 1989), the court considered a similar employment exclusion and found that it was broad enough to encompass sexual harassment and negligent hiring and supervision claims. <u>Bovee</u>, 777 S.W.2d at 444.

10

Gisentaner argues that the language in Cornhill's policy is similar to that in <u>Western Heritage Insurance Company v. Magic Learning Centers and Child Care, Inc.</u>, 45 F.3d 85, 88-89 (5th Cir. 1995), and that this employment-related claim exclusion only excludes claims against Valsamis, Inc. because it is the only employer.  However, the policy language in <u>Magic Years</u> did not contain the language found in Cornhill's policy excluding coverage for liability of one employee to another.  Therefore, the holding in <u>Magic Years</u> that the employment exclusion only applied to claims against the employer and not to claims against the president and secretary of the organization does not control our decision here.

Gisentaner also argues that because her secretarial duties included accounting and scheduling for shiprepairing operations, she should benefit from the shiprepairing endorsement.  The endorsement covers:

> legal liability of the Assured for death or personal injury occurring in the course of and arising from the shiprepairing operations of the Assured but in no event . . . for any claim arising directly or indirectly under . . . Common Law Liability in respect of loss of life, bodily injury to, or illness of any workman or other person employed in any capacity whatsoever by the Assured, his agents or sub-contractors when such loss of life, bodily injury to, or illness arises out of or in the course of the employment of such workman or other person.

Gisentaner's argument, however, ignores the requirement that the personal injury must arise from the shiprepairing operations. Gisentaner's injuries arose from sexual harassment, not the administrative support work she did for the shiprepairing operations.

11

## C. OMI Policy

OMI provided a umbrella excess liability policy that covered damages on account of personal injuries caused by or arising out of an occurrence. The personal injury definition included invasion of privacy, false detention, and discrimination. OMI's policy also originally contained an employee exclusion but this was eliminated when Valsamis purchased employee buy-back coverage.

Because OMI's policy does not contain an employment exclusion, we must determine whether Gisentaner's claims fall within the definition of personal injury in OMI's policy. Under OMI's policy, personal injury coverage requires an occurrence. OMI's policy defines an occurrence as "an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability."

Gisentaner claims that we are bound to accept the characterization of Valsamis' acts as negligent because judgment was entered on this basis in the state court as a result of the settlement between herself and Valsamis. However, in Columbia Mutual Ins. Co. v. Fiesta Mart, 987 F.2d 1124 (5th Cir. 1993), a panel of this court declined to bind an insurer to findings in a state court suit where coverage was not at issue. Fiesta Mart, 987 F.2d at 1127. Therefore, we must characterize the facts alleged in Gisentaner's complaint to determine whether they fall within the language of OMI's policy.

Gisentaner also insists that we look at each individual cause of action she listed in her complaint to determine whether she alleged an "occurrence."  In her original complaint, Gisentaner alleged negligent infliction of emotional distress, negligent invasion of privacy, and negligent hiring and supervision.  In 1993, the Texas Supreme Court eliminated negligent infliction of emotional distress as a cause of action.  Boyles v. Kerr, 855 S.W.2d 593, 593 (Tex. 1993).  Texas law also requires proof of intent for an invasion of privacy cause of action.  See Billings v. Atkinson, 489 S.W.2d 858, 859 (Tex. 1973); Childers v. A.S., 909 S.W.2d 282, 291 (Ct. App.-Ft. Worth 1995); but see Wheeler v. Yettie Kersting Memorial Hospital, 866 S.W.2d 32, 54 (Tex. App.-Houston 1993, no writ)(finding that the question of whether Texas law recognizes a claim of negligent invasion of privacy is still an open question).  Therefore, the only negligence claims available under Texas law are for negligent supervision and hiring of Papapetrou.

This circuit has held that where liability premised on negligence is related to and interdependent of other tortious activities, the "ultimate issue" is whether the tortious activities themselves are encompassed by the "occurrence" definition.  New York Life Ins. v. Traveler's Ins. Co., 92 F.3d 336 (5th Cir. 1996); Fiesta Mart, Inc., 987 F.2d at 1128 (citing Thornhill v. Houston Gen. Lloyds, 802 S.W.2d 127, 130 (Tex. App.-Fort Worth 1991-no writ); Centennial Ins. Co. v. Hartford Accident and Indemnity Co., 821 S.W.2d 192, 1994 (Tex. App.-Houston 1991, no writ); Fidelity

13

and Guaranty Ins. Underwriters, Inc. v. McManus, 633 S.W.2d 787, 790 (Tex. 1982)). Gisentaner's negligent hiring and supervision claims require proof of misconduct by Papapetrou. See Canutillo Independent School District v. National Union Fire Ins. Co., 99 F.3d 695, 705 (5th Cir. 1996)(finding that negligent supervision claim would not exist without damage caused by sexual abuse). Therefore, our only inquiry is whether Papapetrou and Valsamis' acts are covered under the definition of "occurrence."

The district court cited Old Republic Ins. v. Comprehensive Health Care, 786 F.Supp. 629 (N.D. Tex. 1992), affd. on other gds., 2 F.2d (5th Cir. 1993), for the proposition that intentional torts, such as sexual harassment, cannot be occurrences under Texas law. Old Republic held that intentional or willful acts are not "occurrences" as that term is defined in insurance policies. The specific language in Old Republic mirrored that of OMI's policy here, stating that occurrences result in personal injuries neither expected nor intended from the standpoint of the insured. Old Republic, 786 F.Supp. at 633. The court in Old Republic noted that Texas courts had consistently excluded intentional torts from the definition of "occurrence" and found that the insured had not produced Texas precedent to call these decisions into question.

In one of the cases cited by Old Republic, Argonaut Southwest Insurance Company v. Maupin, 500 S.W.2d 633, 636 (Tex. 1973), the Texas Supreme Court considered whether an intentional tort could be considered an occurrence under a comprehensive general liability policy. The policy in Maupin defined an occurrence as "either (a)

14

an accident, or (b) in the absence of an accident, a condition for which the insured is responsible which during the policy period causes physical injury to or destruction of the property which was not intended." Maupin, 500 S.W.2d at 634 n.1. The insured in Maupin purchased dirt from a man who occupied a parcel of land, mistakenly thinking that he owned the land. The insured then went onto the land and removed the dirt. The actual owners then sued the insured for trespass. The court found that the resulting injury to the owners was not caused by an occurrence because the insured acted intentionally when he took the soil off the property, even though the resulting injury was unforeseen or unintended. Maupin has been interpreted by Texas courts to exclude intentional acts from the definition of occurrence without regard to whether the harm was expected or intended by the actor. See, e.g., Pierce v. Benefit Trust Life Insurance Co., 784 S.W.2d 516, 518 (Ct. App.-Amarillo 1990)(finding that the insured's hernia was not caused by an occurrence because, although it was unexpected and unintended, it resulted from the insured's intentionally lifting a bag); Baldwin v. Aetna Casualty & Surety Co., 750 S.W.2d 919, 920 (Tex. App.-Amarillo 1988, error denied)(finding that the definition of occurrence excluded a trucking company's claims for damage caused by their deliberately putting overweight trucks on the road); Southern Farm Bureau Casualty Ins. Co. v. Brock, 659 S.W.2d 165 (Ct. App.-Amarillo 1983)(finding that damage to a truck that was rammed into a car in order to prevent the occupant of the car from

15

shooting someone was not caused by an occurrence because the truck driver meant to drive into the car).

Gisentaner claims, however, that the Texas supreme court's decision in State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374 (Tex. 1993) modifies the rule in Maupin to require specific intent to commit the harm for a claim to fall outside the definition of occurrence. She reasons that an intentional act with unintended consequences can still give rise to liability unexpected or unintended from the standpoint of the insured.

In State Farm, the supreme court considered whether an intentional injury exclusion precluded recovery for a woman who contracted herpes from her boyfriend. The court held that the transmission of herpes was not an intentional act, despite the intentional nature of the intercourse, because the boyfriend was asymptomatic and therefore the transmission was not a "natural result" of his intentional act. The court explained that Maupin stood for the proposition that damage is not accidental where the acts are voluntary and intentional and the injury was the natural result of the act, "even though the injury may have been unexpected, unforeseen and unintended." State Farm, 858 S.W.2d at 377 n.2.

Even if Texas law requires specific, instead of general, intent, we find that the harm in this case was not caused by an occurrence. State Farm does not preclude a finding that intent to cause injury can be inferred as a matter of law. The Texas supreme court noted that the question of intent is highly fact specific and

16

that an actor intends to injure if he believes that the consequences of his acts are substantially certain to follow. State Farm, 858 S.W.2d at 379. In the present case, Gisentaner's first amended complaint alleged that Papapetrou and Valsamis' conduct was "extreme and outrageous, undertaken for the purpose of causing  . . . severe emotional distress," and was "calculated to and did produce . . . severe emotional distress." Her injuries were the natural result of Valsamis' actions and were substantially certain to follow.

## IV.

Gisentaner also alleges that the district court erred in failing to require the insurers involved in this case to post a bond with the court, as required by Tex. Ins. Code Ann. art. 1.36, § 11 (Vernon's Supp. 1991). However, under that provision, a court has discretion to dispense with the deposit of a bond. We find that the district court acted within its discretion by releasing Americas, Cornhill, and OMI from the bond requirement.

## CONCLUSION

Because we find that Gisentaner's claims did not raise a potential for coverage under the policies issued by Americas, Cornhill, and OMI, we AFFIRM the decision of the district court.

17