United States Court of Appeals,

Fifth Circuit.

No. 96-60227.

AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, Plaintiff-Counter Defendant-Appellee,

v.

The 1906 COMPANY, formerly known as Hattiesburg Coca-Cola Bottling Company, et al., Defendants,

The 1906 Company (formerly known as Hattiesburg Coca-Cola Bottling Company), John C. Thomson, Richard S. Thomson, Defendants-Cross Defendants-Counter Claimants-Appellants,

General Star National Insurance Company, Defendant-Cross Claimant-Counter Claimant-Appellant.

Dec. 9, 1997.

Appeal from the United States District Court for the Southern District of Mississippi.

Before DAVIS, STEWART and PARKER, Circuit Judges.

DAVIS, Circuit Judge:

American Guarantee and Liability Insurance Company ("American Guarantee") filed a declaratory judgment action to resolve coverage questions between it and its insureds, the 1906 Company, formerly known as Hattiesburg Coca-Cola Bottling Company ("Hattiesburg Coke"), and certain officers of that company. The district court determined on summary judgment that American Guarantee's comprehensive general liability policy afforded no coverage for the outstanding claims. We affirm in part, vacate in part, and remand the case for further consideration in light of our opinion.

I.

The facts of this case are essentially undisputed. Having

1

recently developed an interest in photography while living in Minnesota, John Thomson returned to Hattiesburg, Mississippi with a desire to open his own photography studio. In early 1990, Richard Thomson, John's father and CEO of Hattiesburg Coke, authorized the use of Hattiesburg Coke funds to open a photography studio, Visual Arts Studio (VAS). The new studio was located at 3820 Hardy Street, Hattiesburg, Mississippi, more than a mile from the company's bottling operation. The studio concentrated on photographing and videotaping young women for modeling portfolios and advertisements, as well as "glamour photography." Although the studio operated under a different name and was physically separate from the bottling company, it was owned and operated as a division of Hattiesburg Coke. Moreover, the VAS employees were considered employees of Hattiesburg Coke, and all major business decisions concerning the studio, from the purchase of equipment to the scope and ultimate termination of the business, were made at Hattiesburg Coke's corporate headquarters at 4501 Hardy Street.

By the spring of 1991, VAS was operating in the red and John Thomson wanted to return to school. Thus, Hattiesburg Coke officials decided to terminate the studio's operations. John, however, still had access to VAS and was in the midst of winding up its affairs when the events giving rise to the underlying state court lawsuits came to light.

In November 1991, a VAS client picked up a videotape which she thought contained her portfolio photographs. When she viewed the tape, she discovered footage of herself dressing and undressing in

2

the VAS dressing room.  She reported her discovery to police, who searched the studio and found numerous other tapes containing footage of young women dressing and undressing in the same room. The police also discovered a fiber optic camera concealed underneath a bench in the dressing room.

In the months following the police investigation, twenty-one women filed lawsuits against John Thomson, Richard Thomson, VAS, and Hattiesburg Coke. These plaintiffs alleged various causes of action including invasion of privacy, outrage, intentional infliction of emotional distress, fraud, negligence, and exploitation of minors.  The complaints included allegations that Hattiesburg Coke and Richard Thomson were vicariously liable for John's acts because John acted as a Hattiesburg Coke employee in making the tapes and because John served as a director and officer of Hattiesburg Coke. The complaints also sought to visit liability on Hattiesburg Coke and Richard Thomson for a host of negligence-based torts, including negligent entrustment, negligent supervision, and negligent hiring.

Hattiesburg Coke held liability insurance policies for the periods in question.  American Guarantee, their principal insurer, issued a combined property and comprehensive general liability insurance policy to Hattiesburg Coke covering the period from December 31, 1989, through December 31, 1990.  The policy was renewed for the period from December 31, 1990, through December 31, 1991.  The policy provided liability insurance coverage of $500,000 per occurrence and $1,000,000 in the aggregate.  Hattiesburg Coke

3

was also the named insured under an Umbrella Liability Policy for the Coca-Cola Bottlers Association issued by General Star National Insurance Company ("General Star") for the policy period January 1, 1990, through January 1, 1991. Each General Star policy provided liability coverage of $5,000,000 per occurrence and in the aggregate.

After discussions concerning coverage, American Guarantee agreed to defend Hattiesburg Coke and Richard Thomson in the state court suits under a reservation of rights, but refused to defend or indemnify John Thomson. In its reservation of rights correspondence, American Guarantee raised several coverage questions, including whether the VAS building was a designated premises; whether the conduct alleged constituted an "occurrence"; whether the damages alleged constituted "bodily injury"; and whether John's conduct fell within a policy exclusion for criminal activities. Eventually, nineteen of the twenty-one suits were settled,[1] with John Thomson agreeing to contribute approximately $2,545,000 and General Star agreeing to pay approximately $3,774,000 on behalf of Richard Thomson and Hattiesburg Coke.

Once the underlying lawsuits were settled, American Guarantee filed this declaratory judgment action against John Thomson, the 1906 Company, Richard Thomson, and General Star to resolve its coverage obligations. The district court found that the insurance policy unambiguously limited liability coverage to injuries arising from certain premises designated on the declarations page of the

---

[1]The remaining two suits were dismissed as time barred.

4

policy and that the VAS property was not included in that designation. The court also concluded that John Thomson's actions were not within the scope of his employment and that the injuries alleged by the women did not constitute an "occurrence" under the policy because they were intended or expected from the standpoint of the insured. Accordingly, the district court granted summary judgment in favor of American Guarantee. The court also denied General Star's claim for indemnification for the payments it had made on behalf of Richard Thomson and the 1906 Company. This appeal followed.

## II.

We review the district court's grant of summary judgment and its interpretation of American Guarantee's insurance policy *de novo,* applying the same standards as the district court. *American States Ins. Co. v. Nethery,* 79 F.3d 473, 475 (5th Cir.1996); *Constitution State Ins. Co. v. Iso-Tex, Inc.,* 61 F.3d 405, 407 (5th Cir.1995). Under Mississippi contract law, if an insurance policy is unambiguous, its terms must be given their plain meaning and enforced as written. *Nethery,* 79 F.3d at 475; *Aero Int'l, Inc. v. United States Fire Ins. Co.,* 713 F.2d 1106, 1109 (5th Cir.1983). However, if, but only if, a policy is ambiguous, it will be interpreted in the light most favorable to the insured. *Nationwide Mut. Ins. Co. v. Garriga,* 636 So.2d 658, 662 (Miss.1994).

## A.

The primary dispute between the parties concerns the effect of a designated premises endorsement attached to American

5

Guarantee's policy. The policy provided coverage to Hattiesburg Coke and its officers and directors while acting within the scope of their employment. An endorsement attached to the policy and specifically made part of the policy in the declarations limited coverage to injuries and damages arising out of certain designated premises. The contract language is reproduced below:

**LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

SCHEDULE

Premises:

Project:

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury," "property damage," "personal injury," "advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; ...

No premises are listed in the endorsement. The only premises referenced on the declarations page of the policy are three buildings, listed under the header "Covered Premises," located at 4501 Hardy Street in Hattiesburg, Mississippi: the bottling plant (4501-A), the maintenance building (4501-B), and the ice house (4501-C). No other properties are mentioned in the declarations

6

and no specific reference ties the listed premises to the designated premises endorsement.

Hattiesburg Coke contends that because no premises are listed in the endorsement itself and because those premises listed in the declarations make no reference to the designated premises endorsement, the endorsement has no effect; consequently, the liability coverage is not limited to injuries arising out of any particular property. It further contends that the endorsement is at least ambiguous, and ambiguities must be construed against the insurer under Mississippi law. *See Papa v. Mississippi Farm Bureau Cas. Ins. Co.,* 573 So.2d 761, 763 (Miss.1990); *Lumbermens Mut. Cas. Co. v. Thomas,* 555 So.2d 67, 70 (Miss.1989).

American Guarantee argues that the endorsement makes clear that where no premises are specifically listed on the endorsement, the designated premises are those listed on the declarations page. Since the VAS property is not listed in the declarations, or anywhere else in the policy, there is no coverage for the injuries arising out of that property according to American Guarantee.

While the policy language could be clearer, we agree with the district court that the endorsement is sufficiently clear to qualify as unambiguous. The designated premises endorsement is specifically incorporated into the policy on the declarations page, thus putting Hattiesburg Coke and its officials on notice that their coverage was limited to certain premises. The endorsement refers the reader back to the declarations page to find the covered premises if no premises are listed on the endorsement. Three

7

covered premises are listed in the declarations and the VAS property is not among them. If the designated premises endorsement did not incorporate the premises listed in the declarations, then there was no purpose in incorporating the endorsement into the policy in the first place. We decline to adopt a reading of the policy that would render the entire endorsement surplusage. *See, e.g., Brown v. Hartford Ins. Co.,* 606 So.2d 122, 126 (Miss.1992) (citing cases).

For these reasons, we agree with the district court that the policy unambiguously limits liability under both coverage A and B to injuries arising out of the three premises listed on the declarations page of the policy. Because the VAS premises is not included in that list, the district court correctly concluded that the endorsement excluded liability for injuries arising out of the VAS operation. John Thomson's actions giving rise to the injuries all occurred at and were related solely to his use of the VAS studio. Therefore, the district court correctly granted summary judgment in favor of American Guarantee with respect to claims against John Thomson.[2] The same is true for exclusion from coverage on all claims against Hattiesburg Coke and Richard Thomson seeking to hold them vicariously liable for John Thomson's actions. We reach this conclusion because those claims arise solely from

---

[2]The district court also concluded that John Thomson's actions in surreptitiously videotaping the women at VAS were beyond the scope of his employment. Because we conclude that coverage for John Thomson's actions is excluded by the plain terms of the designated premises endorsement, we need not reach the scope of employment issue.

actions taken by John Thomson at the VAS studio.

B.

Appellants further contend that even if the district court correctly concluded that the designated premises endorsement excludes coverage for injuries arising out of use of the VAS property, it does not follow that this endorsement excludes coverage for negligence claims against Hattiesburg Coke and Richard Thomson. These insureds point out that their supervisory actions over VAS and John Thomson were conducted from Hattiesburg Coke's headquarters at 4501 Hardy Street, a designated premises. They contend that because their supervision of VAS occurred at a designated premises, their conduct constitutes a "use" of a designated premises or at least an "operation ... incidental to" a designated premises under the endorsement.

American Guarantee responds that the supervisory actions of Hattiesburg Coke and Richard Thomson, while concededly occurring at Hattiesburg Coke headquarters, related solely to the operation of a nondesignated premises and had no nexus whatever to Hattiesburg Coke's bottling operation, the primary operation of the designated premises. Moreover, American Guarantee points out that the description of the hazards contained in the policy do not refer to any operations of the company other than those related to its bottling operation.

Our review of Mississippi insurance law provides us with little guidance in resolving this issue. We are thus left to make an "Erie guess" about the instant policy's coverage. *See State*

*Farm Fire and Cas. Co. v. Fullerton,* 118 F.3d 374 (5th Cir.1997) ("We may consult a variety of sources in making an Erie-guess: dicta in [state] court decisions, the general rule on the issue, and the rules in other states that [the state] might look to, as well as treatises and law journals."); *Hill v. London, Stetelman, & Kirkwood, Inc.,* 906 F.2d 204, 207 (5th Cir.1990) (same).

Because the policy language is the best indication of the parties' intent, *see, e.g., Cooper v. Crabb,* 587 So.2d 236, 240 (Miss.1991) ("Common sense suggests the parties' writings the most reliable evidence of their intent."), we begin with the terms of the designated premises endorsement. The endorsement limits coverage to certain injuries "arising out of" the "ownership, maintenance or use" of the covered premises and "operations necessary or incidental" to those premises. The phrase "arising out of" is ordinarily understood to mean "originating from," "having its origin in," "growing out of," or "flowing from." *See, e.g., Blue Bird Body Co. v. Ryder Truck Rental, Inc.,* 583 F.2d 717, 726 (5th Cir.1978). In the insurance context, this phrase is often interpreted to require a causal connection between the injuries alleged and the objects made subject to the phrase. For example, in *Roberts v. Grisham,* 487 So.2d 836, 839 (Miss.1986), the Mississippi Supreme Court held that the phrase "arising out of the ownership, maintenance or use of [an] uninsured motor vehicle" required a "causal connection" between the actions giving rise to the injuries and the uninsured automobile. The court went on to note that it is not enough that the " "automobile was merely the

10

situs of the accident which could as well have occurred in any other location.' " *Id.* (citation omitted). Similarly, in *Delta Pride Catfish, Inc. v. Home Insurance Co.,* 697 So.2d 400 (Miss.1997), a court recently concluded that a clause insuring against "advertising injury," where such injury is defined as "injury arising out of an offense ... occurring in the course of the named insured's advertising activities" required a showing of "a causal connection" between the alleged injury and the advertising activities. *See also* 12 COUCH ON INSURANCE § 45:56 at 146-147 (2d ed. 1981 & Supp.1996) ("The phrase "arising out of maintenance or use of a motor vehicle,' ... requires some causal connection between the injury and the use of the vehicle for transportation purposes.")

Thus, we conclude that in the present case the phrase "arising out of" the "use" of the designated premises requires that there be a causal connection between the injuries to the women improperly videotaped by John Thomson and the designated premises located at 4501 Harding Street. We further conclude that such a connection exists. It is undisputed that the decisions to set up VAS, construct its offices, purchase equipment, and, eventually, to close it down, were all made by Richard Thomson and other Hattiesburg Coke officials and employees at Hattiesburg Coke headquarters, a designated premises. Moreover, VAS was operated as a formal division of Hattiesburg Coke, with John Thomson assigned the title of vice president of Hattiesburg Coke's "Visual Arts Division." In addition, Richard Thomson testified in his

11

deposition that all of Hattiesburg Coke's divisions shared the same general checking account and that all of VAS's expenses were paid from this account. John Thomson was required to pay all VAS expenses from a rolling petty cash account and then submit his expenses and receipts to Hattiesburg Coke, which would then remit these sums back into the account.

Under the circumstances, a factfinder could find a causal connection between Hattiesburg Coke and Richard Thomson's supervisory activities, the operation of the designated premises, and the injuries that resulted from John Thomson's intentional and tortious actions at VAS. Our conclusion that a sufficient causal nexus exists is further supported by the fact that the policy at issue is a Commercial General Liability ("CGL") policy, and not merely an Owner's, Landlord and Tenant ("OLT") policy. A leading treatise describes the more limited nature of an OLT policy, as compared with a CGL policy, as follows:

> A very common form of liability insurance is the one which insures the owner, occupier, or operator of real property against liability incident to his ownership or use of the premises. Such insurance, the purpose of which is simply to protect against liability arising from the condition or use of the building as a building must be distinguished from insurance against liability arising from the nature of the enterprise or activity conducted therein. More simply stated, a building liability policy does not cover a liability arising from the insured's activity in the building.

11 COUCH ON INSURANCE § 44:379 at 551-52 (2d. ed.1982). Were we confined to finding a causal connection between the injuries stemming from the improper videotaping at VAS and use of Hattiesburg Coke's premises at 4501 Hardy Street *as a building,* we doubt we would reach the same conclusion. However, a CGL policy is

12

designed to insure its holder from more than just injuries arising from the condition or use of its buildings as buildings.  For the reasons described above, we conclude that the requisite causal connection exists between the injuries alleged in the underlying state court lawsuits and the use of the company's headquarters by Richard Thomson and Hattiesburg Coke to supervise John Thomson's activities at VAS, a wholly-owned division of the company.  Thus, the negligence claims against Hattiesburg Coke and Richard Thomson are not excluded from coverage by the designated premises endorsement.

C.

American Guarantee argues that even if coverage for Hattiesburg Coke and Richard Thomson is not excluded under the designated premises endorsement, there is no coverage for these injuries because there has been no "occurrence" under the policy. To answer this contention requires a closer look at the coverage portions of American Guarantee's policy.

The commercial comprehensive general liability policy is divided into two parts.  The first part, Coverage A, insures against "bodily injury" and "property damage" liability.  This coverage applies only to bodily injury or property damage that is caused by an "occurrence," which is defined by the policy to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Also, Coverage A expressly excludes coverage for bodily injury or property damage "expected or intended from the standpoint of the insured."

13

The second part, Coverage B, insures against liability for "personal injury" and "advertising injury." Rather than using "occurrence," as a predicate for coverage, Coverage B provides coverage for qualifying injuries "caused by an offense arising out of your business." The policy does not define the term "offense." The policy does, however, define "personal injury" as being all injury, other than bodily injury, that arises out of certain specified "offenses." Coverage B also excludes coverage for injuries "[a]rising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured."

For the reasons set forth below, we conclude that the only direct claims against Hattiesburg Coke and Richard Thomson predicated on their own fault are not covered under Coverage A of the policy. However, as we explain later, because the parties have not adequately addressed coverage under Coverage B, we remand questions relating to Coverage B to the district court.[3]

1.

American Guarantee argues that the claims under Coverage A against Hattiesburg Coke and Richard Thomson are excluded by the "deliberate acts" exclusion, which removes coverage for all injuries "expected or intended from the standpoint of the insured." There can be no doubt that John Thomson intended to surreptitiously

_____

[3]As we held above, all of the claims under Coverage A and B against John Thomson, as well as those claims asserted against Richard Thomson and Hattiesburg Coke on a theory that they are vicariously liable for John's actions, are excluded by the designated premises clause. Accordingly, only the negligence claims against Richard Thomson and Hattiesburg Coke remain at issue.

14

videotape the women and that the harm caused thereby was expected from his standpoint. Richard Thomson and Hattiesburg Coke concede as much, but they argue that from their standpoint, the conduct was neither intended nor expected. They further contend that the "separation of insureds" clause in the policy requires that we examine their expectations and intent entirely divorced from those of John Thomson.[4]

Although we have found no Mississippi cases addressing this issue, this Court, in applying the law of neighboring jurisdictions, has repeatedly rejected this argument. These cases hold that no coverage is provided the employer or supervisory personnel for claims of negligent hiring or supervision when the underlying tortious conduct is intentional and when those claims against the employer or supervisor are related to and are interdependent on the employee's intentional misconduct. *See Cornhill Insurance PLC. v. Valsamis, Inc.,* 106 F.3d 80, 87 (5th Cir.1997) ("[W]here liability premised on negligence is related to and interdependent of other tortious activities, the "ultimate issue' is whether the tortious activities themselves are encompassed by the "occurrence' definition."); *New York Life Ins.*

---

[4]The separation of insureds clause provides:

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
>
> > a. As if each Named Insured were the only Named Insured; and
> >
> > b. Separately to each insured against whom claim is made or "suit" is brought.

*v. Travelers Ins. Co.,* 92 F.3d 336, 339 (5th Cir.1996) (excluding claims for negligent hiring, training, and supervision against employer that were "related to" and "interdependent on" claim of fraud by employee because employee's intent is imputed to employer); *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.,* 99 F.3d 695, 703 (5th Cir.1996) ("Where the legal claims asserted by the plaintiffs are not independent and mutually exclusive, but rather related to and dependent upon excluded conduct, the claims are not covered, even if asserted against an insured who did not himself engage in the prohibited conduct."); *Old Republic Ins. Co. v. Comprehensive Health Care Assoc., Inc.,* 786 F.Supp. 629, 632 (N.D.Tex.1992), *aff'd on other grounds,* 2 F.3d 105 (5th Cir.1993) (finding no duty to defend insured against claim of negligent hiring when the claim of negligent hiring arises out of agent's intentional sexual harassment); *Columbia Mut. Ins. Co. v. Fiesta Mart, Inc.,* 987 F.2d 1124, 1128 (5th Cir.1993) (holding that under Texas law, where liability of insured and liability of its agent were "related and interdependent," court must look to whether agent's fraud was covered by policy); *Huey T. Littleton Claims, Inc. v. Employers Reinsurance Corp.,* 933 F.2d 337, 339 (5th Cir.1991) (holding that under Louisiana law, dishonest act exclusion in employer's commercial liability policy excluded negligence and vicarious liability claims against employer for losses based upon the excluded conduct of its employee).

A leading commentator has observed that courts have not been consistent in their treatment of separation of insured clauses,

16

particularly where claims against one insured are closely related to claims against another. *See* 7A J. Appleman, INSURANCE LAW AND PRACTICE § 4492.01 at 20 (Berdal ed. 1979) ("The severability clause added to standard liability policies in 1955 is not usually recognized in most of the litigation regarding intentional or negligent acts that result in liability to the insured. It would seem that its implications are not recognized adequately by the litigants or the courts."). Indeed, this is an issue that has caused our Circuit some difficulty. *See Western Heritage Ins. v. Magic Years Learning Ctrs. & Child Care, Inc.,* 45 F.3d 85 (5th Cir.1995) (holding negligence claims against employer related to sexual molestation of child by employee were not excluded by intentional acts exclusion, in part because the policy contained a separability clause); *New York Life,* 92 F.3d at 340 n. 4 (declining to follow *Magic Years* because that portion of the opinion related to the intentional acts exclusion was an alternative holding, and because it failed to acknowledge and is inconsistent with our opinion in *Fiesta Mart,* which was binding as prior precedent).

Although a close question, we conclude that Mississippi courts would likely follow the lead of neighboring jurisdictions and hold that where negligence claims against an employer, such as negligent hiring, negligent training, and negligent entrustment, are related to and interdependent on the intentional misconduct of an employee, the "ultimate question" for coverage purposes is whether the employee's intentional misconduct itself falls within

17

the definition of an occurrence.  As we explained in *New York Life,* the issue turns largely on principles of agency and imputed intent.  *See* 92 F.3d at 340-41 ("*Fiesta Mart* resolves ... whether an agent's intent or expectations will be imputed to a principal," and holds that "[w]hen an agent intends or expects an injury, such intent and knowledge will be imputed to the principal for purposes of determining whether there is an occurrence.").  We believe Mississippi courts would apply these same principles in resolving the issue.

Because the injuries stemming from the improper videotaping were intended or expected from the standpoint of John Thomson, the related negligence claims against Hattiesburg Coke and Richard Thomson are excluded under Coverage A. Accordingly, we conclude that the district court properly granted summary judgment in favor of American Guarantee on this issue.

2.

Hattiesburg Coke and Richard Thomson argue further that even if the district court correctly found that American Guarantee provided no coverage to them under Coverage A, they are still entitled to recover under Coverage B. The district court, apparently concluding that it had resolved all the coverage issues presented, did not specifically address the applicability of Coverage B. Furthermore, although appellants claim coverage exists under Coverage B, they provide scant discussion of this issue in their briefs.  We are also unable to determine from the record whether the parties raised Coverage B issues with sufficient

18

specificity in the district court so that we should address them on appeal.  Rather than resolve this issue on the basis of the limited record before us, we remand the issues under Coverage B to the district court for further consideration in light of this opinion.[5]

### III.

In summary, we agree with the district court that all claims against John Thomson are excluded from coverage by the designated premises endorsement.  We also agree that American Guarantee's policy provides no coverage to Richard Thompson and Hattiesburg Coke for claims predicated on those insured's vicarious liability for John's acts.  The remainder of the claims against Richard Thomson and Hattiesburg Coke are excluded from coverage under Coverage A by the "intentional acts" exclusion.  To the extent the district court's order excluded coverage to Richard Thomson and Hattiesburg Coke under coverage B, that part of the order is vacated and we remand to the district court to determine whether the claims against Richard Thomson and Hattiesburg Coke are covered under Coverage B of the policy.  The district court shall also consider Richard Thomas and Hattiesburg Coke's claim for attorney's fees on remand.  Accordingly, the district court's grant of summary judgment in favor of American Guarantee is AFFIRMED IN PART,

---

[5]The parties also dispute whether Richard Thomson and the 1906 Company are entitled to reimbursement of attorneys' fees they expended for counsel they independently retained after American Guarantee agreed to defend them under a reservation of rights.  The district court did not address this issue, and American Guarantee contends the issue was not properly preserved below.  In light of our decision to remand the issue of coverage under Coverage B of the policy, we also remand the question of attorney's fees for the district court's consideration.

19

VACATED IN PART, and REMANDED for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

PARKER, Circuit Judge, concurring in part, dissenting in part:

## COVERAGE AS TO JOHN THOMSON

In granting American Guarantee summary judgment, the district court found that there was no ambiguity as to the designation of premises and held that VAS was not a premises designated by the policy's endorsement. The district court also held that John Thomson's acts were outside the scope of his employment and thus he was not insured under the terms of the policies. The majority affirms the first conclusion and declines to reach the second. I would hold that the policy is ambiguous as to the designation of premises, and that the VAS premises is within the policy's coverage. However, because I believe that the district court was correct in holding that John Thomson's acts were outside the scope of his employment, I concur with the affirmance of the district court's decision that John Thomson was not insured under the policy.

a. Designated Premises

There are no premises listed on the policy's endorsement. The endorsement instructs that if there is no entry as to designated premises, "information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement." The Declarations page lists three properties which are followed by the limits on property coverage liability. There is no reference

20

to the designated premises endorsement nor is there any reference to these premises being designated premises for purposes of liability limitation.

The question presented as to this issue is whether the listing of these three property addresses together with limits on property coverage are to be read as also serving as a list of designated premises for purposes of the discussed endorsement. A district court's interpretation of an insurance policy is a question of law which we review *de novo*. *Boatner v. Atlanta Speciality Ins. Co.,* 115 F.3d 1248, 1251 (5th Cir.1997). An insurance policy is a contract and as such, we turn to contract construction principles. When construing a contract, the contract is read as a whole, so as to give effect to all of its clauses. *Brown v. Hartford Ins. Co.,* 606 So.2d 122, 126 (Miss.1992); *Gunn v. Principal Casualty Ins. Co.,* 605 So.2d 741, 746 (Miss.1992). Viewing the endorsement in light of this rule, we must give meaning to its phrase "as applicable to this endorsement." We may not simply read it out of the contract.

Two reasonable interpretations are possible when reading the endorsement and declarations page together. The endorsement was never completed with the designation of any premises in the appropriate areas indicated on the endorsement and there is no reference to any designation of premises "applicable to [the] endorsement" on the declarations page, leading to the reasonable conclusion that *no* list of premises was included in the contract to which coverage was limited. A second plausible interpretation is

21

urged by American Guarantee and adopted by the majority—that the property addresses listed on the declarations page serve as the designated premises for purposes of the endorsement since the endorsement refers the reader to the declarations page and on the declarations page there is a list of some properties. An ambiguity is defined as a susceptibility to two reasonable interpretations. *Ins. Co. of No. Am. v. Deposit Guaranty Nat'l Bank,* 258 So.2d 798, 800 (Miss.1972). I would find the designated premises portion of the contract ambiguous.

In the case of an ambiguity in an insurance policy, it has long been established that resolution of the ambiguity must be in favor of the insured. *New Hampshire Ins. Co. v. Robertson,* 352 So.2d 1307, 1311 (Miss.1977).

> In construing the provisions of a contract of insurance, all the provisions of the policy must be so construed, if it can be reasonably done, so as to give effect to each. When the policy is subject to two interpretations, equally reasonable, that which gives the greater indemnity to the insured will prevail.... In all cases the policy must be liberally construed in favor of the insured, in order to accomplish the purpose of the insurance.

*Gunn,* 605 So.2d at 746 (quoting *Southern Home Ins. Co. v. Wall,* 156 Miss. 865, 127 So. 298, 299 (1930)). Following this long-established rule of contract construction, I would construe the ambiguity against American Guarantee and find that the policy lacks a designation of premises to which coverage was limited and thus find that the endorsement does not preclude coverage for the VAS premises.

Having determined that the policy did not designate particular

22

1906 Company premises to which coverage was limited[1], I must then determine if coverage is precluded for other reasons.

b. Scope of employment

Under "Section II—Who is an Insured", coverage is excluded for acts by employees not "within the scope of their employment." The district court considered a number of Mississippi cases dealing with the scope issue and found that John Thomson's secret videotaping of the women in the dressing room was not within the scope of his employment and thus no coverage was available under the policy for John Thomson's liabilities.

Mississippi cases have established that the proper inquiry in determining whether tortious acts were within the scope of employment is to ask whether a servant was acting in furtherance of the employer's business by engaging in the activity or whether the employee was engaged in a private purpose. *Holliday v. Pizza Inn, Inc.,* 659 So.2d 860, 865 (Miss.1995). We are called upon to make an *Erie* guess as to whether or not John Thomson was acting within the scope of his employment. *See Nautilus Ins. Co. v. Zamora,* 114 F.3d 536, 538 (5th Cir.1997).

This case does not resemble the Mississippi "deviation" cases in which the servant deviated from the master's business and his tortious acts were thus outside the scope of his employment. *See, e.g., Seedkem South, Inc. v. Lee,* 391 So.2d 990, 995 (Miss.1980); *Lovett Motor Co. v. Walley,* 217 Miss. 384, 64 So.2d 370, 372-73

---

[1]I posit no position on the majority's discussion of causal connection, as my resolution of the designated premises question renders the issue irrelevant.

23

(1953); *Stovall v. Jepsen,* 195 Miss. 115, 13 So.2d 229, 230 (1943). John Thomson did not leave his place of employment and he performed the same acts as he always did at VAS albeit without the permission of the photographic subjects. Rather, the decisive fact in this case was that John Thomson was videotaping the undressed women without their permission and was clearly serving his own purpose in that respect. That aspect of the activities indicates that the videotaping was for John Thomson's own purposes.

The Mississippi Supreme Court has explained that the determination of whether an act was within the scope of employment rests on the employee's purposes in his tortious activity. "[T]he decisive question is not whether the servant was acting in accordance with the instructions of the master, but, was he at the time doing any act in furtherance of his masters' [sic] business. If a servant, having completed his duty to his master, then proceeds to prosecute some private purpose of his own, the master is not liable." *Holliday,* 659 So.2d at 864-65 (quoting *Barmore v. Vicksburg, S & P R.R. Co.,* 85 Miss. 426, 38 So. 210, 212 (1905)). The Mississippi Supreme Court has in effect refocused the scope and coverage inquiry to the question of the employee's purposes.

> The inquiry is not whether the act in question, in any case, was done, so far as time is concerned, while the servant was engaged in the master's business, nor as to mode or manner or doing it,—whether in doing the act he uses the appliances of the master,—but whether, from the nature of the act itself as actually done, it was an act done in the master's business, or wholly disconnected therefrom by the servant, not as servant, but as an individual on his own account.

*Holliday,* 659 So.2d at 864 (quoting *Canton Cotton Warehouse Co. v. Pool,* 78 Miss. 147, 28 So. 823, 824 (1900)). I agree with the

24

district court that coverage for John Thomson is precluded under the policy because his acts were outside the scope of his employment as they were for his own personal purposes. I therefore concur with the majority that the policy affords no coverage for John Thomson.

COVERAGE FOR RICHARD THOMSON AND THE 1906 COMPANY

Since I have concluded that John Thomson acted outside the scope of his employment, there can be no vicarious liability for Richard Thomson and the 1906 Company. Consequently, the policy affords no coverage for Richard Thomson and the 1906 Company for claims of vicarious liability for John Thomson's tortious acts.

We are then left with the direct claims against Richard Thomson and the 1906 Company predicated on their own actions, including, *inter alia,* negligent entrustment, negligent supervision and negligent hiring. The policy contains a "separation of insureds" provision that instructs that the insurance applies "[a]s if each Named Insured were the only named Insured" and that it applies "[s]eparately to each insured against whom claim is made or "suit' is brought." The majority relies on cases holding that where liability premised on negligence is interdependent with other tortious activities, the determining issue for coverage purposes is whether the tortious activities themselves are encompassed by the "occurrence" definition. *See, e.g., Cornhill Ins. PLC v. Valsamis, Inc.,* 106 F.3d 80, 87 (5th Cir.1997) (applying Texas law). These cases involve neither Mississippi law nor the consideration of separation of insureds provisions. As a court sitting in

25

diversity, we are obligated to do as we believe the Mississippi Supreme Court would think best. *See Zamora,* 114 F.3d at 538. The Mississippi Supreme Court has made no suggestion of following the way of the "*Cornhill*-type" cases. Under Mississippi law, "the keystone of the occurrence definition is that the event giving rise to the claim should be neither expected nor intended from the standpoint of the insured." *U.S. Fidelity & Guaranty Co. v. T.K. Stanley, Inc.,* 764 F.Supp. 81 (S.D.Miss.1991). A leading treatise offers a similar definition: "the act is an accident if it was unexpected or unanticipated from the standpoint of the insured." *Couch on Insurance 2d* (rev. ed.) § 41:14, at 20-21. One district court has explained the proper approach.

> "The test of whether an injury is the result of an accident is to be determined from the viewpoint of the insured and not from the viewpoint of the one that committed the act causing the injury." *Mohn v. Am. Casualty Co.,* 458 Pa. 576, 326 A.2d 346 (1974). Obviously, from the standpoint of [the employer], [the employee]'s acts were "unexpected or unanticipated." It would require a tortured interpretation of this case to decide that when [the employer] hired [the employee] it intended or expected that he would molest children.

*Silverball Amusement, Inc. v. Utah Home Fire Ins. Co.,* 842 F.Supp. 1151, 1157-58 (W.D.Ark.) (considering a policy's definition of "occurrence" virtually identical to the one in policy at hand), *aff'd,* 33 F.3d 1476 (8th Cir.1994). I remain mindful of the long-established rule of Mississippi contract construction that directs that ambiguities be resolved against the insurer. *Gunn,* 605 So.2d at 746. As there is no allegation that the 1906 Company or Richard Thomson expected or intended to injure the plaintiffs in the underlying state suits, the policy's definition of "occurrence"

does not preclude coverage for either of these two appellants.

CONCLUSION

I concur with the majority's determination that the policy in question affords no coverage to John Thomson or VAS, although I reach that conclusion by a different route. I further concur that the issues under Coverage B of the policy as well as the question of attorney fees should be remanded to the district court for further consideration.

However, I dissent from the majority's determination that the policy afforded no coverage to Richard Thomson and the 1906 Company under the separation of insureds clause. Because the district court found that American Guarantee had no obligations under its policy, it found no basis for General Star's claim for indemnity for the payments it had made on behalf of Richard Thomson and the 1906 Company. Because I would hold that American Guarantee was indeed obligated to Richard Thomson and the 1906 Company under its policy, I would also remand General Star's indemnity claim to the district court for a determination of the amount of American Guarantee's indemnity obligation to General Star.